BESS BURKITT CRANE ET AL V. HONORABLE BERT H. TUNKS, DISTRICT JUDGE ET AL.

No. A-7077. Decided October 28, 1959.
(328 S.W. 2d Series 434)

*Kelley & Ryan,* of Houston and *Hardy Hollers,* of Austin, for relators.

*Fred Parks* and *Fred A. Collins,* both of Houston, for D. J. Glenney III, a respondent.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

Relators, Bess Burkitt Crane, and her attorney, Robert H. Kelley, bring this action for a writ of mandamus against Hon-

orable Bert H. Tunks, District Judge, and D. J. Glenney III, as respondents, to vacate, amend and revise an order entered by Judge Tunks in a discovery proceding pending in his court.

From 1939-1958 D. J. Glenney, Jr., the father of the D. J. Glenney III, was business manager for the properties owned by relator Bess Burkitt Crane. On October 15, 1940 Mrs. Crane executed an instrument conveying her undivided interest in and to 1409 acres of land out of the Jackson E. Bundick Survey, Harris County, Texas, to Glenney, Jr. This deed was not recorded by Glenney, Jr. until 1946. Mrs. Crane's deed reserved to her for her natural life all income, rents and revenues of whatever kind and character from the 1409 acres. She also reserved the executive right to make, execute and deliver any and all instruments affecting the mineral interests she had in the land. The deed further provided that should Glenney, Jr. predecease her then the deed should be null and void and of no further force and effect, and all rights vested in Glenney, Jr. by virtue of such deed should thereafter immediately revert to and vest in the grantor without the necessity of re-entry or other action on her part. The record shows Glenney, Jr. alive at the time of the trial.

During the year 1950, Mrs. Crane had Ernst & Ernst make an independent audit of her business affairs. This audit showed that Glenney, Jr. was indebted to Mrs. Crane in a sum of some $80,000 as a result of Glenney, Jr. overdrawing his salary account and otherwise using funds belonging to Mrs. Crane. Following this audit Glenney, Jr., on May 22, 1950 reconveyed to Mrs. Crane the interest he had received from her by deed in 1940.

On January 31, 1958 Mrs. Crane discharged Glenney, Jr. On February 21, 1958, respondent, D. J. Glenney III, filed his original petition in the 152nd District Court of Harris County, Texas, alleging that subsequent to May 22, 1950 and on March 5, 1958, his father had deeded and transferred to him all his interest in said 1409 acres, subject to all leases, royalties and mineral reservations and rights-of-way set out in Mrs. Crane's deed to Glenney, Jr., dated October 15, 1940. Glenney III sought to recover the title to and possession of the 1409 acres from relator, Mrs. Crane, on the ground that his father was subjected to fraud, duress, and coercion at the time he executed the reconveyance, and Glenney III sought to cancel and set aside this reconveyance dated May 22, 1950. The duress alleged was that both relators were accusing Glenney, Jr. of forgery and

threatening him with criminal prosecution unless he executed the deed or reconveyance. The suit to set aside the deed was numbered 502,264. Glenney III filed his first amended petition in that cause on August 8, 1958 and attached to this pleading an affidavit of Glenney, Jr. in which Glenney, Jr. swore to the truthfulness of certain allegations. Glenney III, on September 22, 1958, filed his second amended petition alleging the same cause of action as contained in the two prior petitions. In the alternative, he alleged that the deed of reconveyance from Glenney, Jr. to Mrs. Crane dated May 22, 1950 was in truth and in fact a mortgage to secure the approximately $80,000 owing by Glenney, Jr. to Mrs. Crane, and he prayed that such instrument be so construed. None of the pleadings filed by Glenney III were sworn to, and no affidavit accompanied, or was attached, to the second amended original petition.

On August 14, 1958 Glenney III filed a petition, or application, for a bill of discovery as ancillary to Cause No. 502,264. This was Cause No. 512,093 in the 80th Judicial District Court of Harris County, Texas. This cause was later transferred to the 152nd District Court. Relators, Mrs. Crane and Kelley, were defendants in this bill of discovery proceeding. Glenney III alleged that he was bringing his bill of discovery pursuant to Rule 737, Vernon's Ann. Texas Rules Civ. Proc., and asked to have produced for his examination the books, records, papers, correspondence and memoranda as follows: (1) income tax records of Mrs. Crane for the years 1939 to date; (2) an audit by Ernst & Ernst of Mrs. Crane's affairs made in 1950; (3) all checks, notes, or other negotiable instruments in her possession, or in the possession of her attorney, that purported to bear her signature but which she will testify she did not sign; (4) all wills and codicils to wills of Mrs. Crane from January 1, 1939 to date; (5) (not relevant to this proceeding) ; (6) a complete itemized list showing dates, amounts and payees of any contributions and/or donations made to (a) a certain priest and naming him (b) a certain church order and naming it; and (7) all correspondence, notes, letters, memoranda, or copies thereof to or from the individual named in (6) (a) above. Glenney III further asked to be permitted to reproduce any and all such written instruments as is provided in Rule 167, Vernon's Ann. Texas Rules Civ. Proc.; he alleged such documents were not privileged nor were they written communications between relators, their agents, representatives, or employees in connection with the investigation or defense of the main suit brought by Glenney III. Glenney III then alleged:

"There is further good cause for the production, inspection, reproduction and/or copying of said items as herein requested by D. J. Glenney III because each of said records requested are either the originals thereof or the only known copy thereof, and that Plaintiff, D. J. Glenney III, would show the Court that he has no copy of said instruments and unless said instruments, and each of them, be required to be produced and inspected, reproduced and copied by him, he will be unable to prepare the pending litigation for trial, being Cause No. 502,264, hereinabove referred to, as is contemplated by Rule 737, T.R.C.P."

He further alleged that the bill of discovery was not brought to harrass or inconvenience the defendants or either of them but it was brought in order that justice may be served in connection with the preparation and trial of Cause No. 502,264, the main suit. Attached was a copy of his First Amended Original Petition in said cause. This application, or petition, was not verified; neither was the plaintiff's First Amended Original Petition in the main suit. Mrs. Crane filed a sworn plea in abatement and an answer in which she set out more fully the facts surrounding all deeds and Glenney, Jr.'s employment by her; a general denial, and a plea of limitations, etc.

On November 5, 1958, after hearing evidence, the trial court, with Judge Tunks sitting, entered an order granting Glenney III a bill of discovery as to all items enumerated in the petition, except (5), and required relators to appear before the trial court and testify in person on November 10, 1958, and bring with them the documents designated in Glenney III's application as modified by the court's order. This order, in addition to granting the bill of discovery aforesaid, provided for the inspection and copying of said instruments as were material and relevant to plaintiff's main suit, "in such manner as the Court may deem proper and upon terms and conditions that the Court may deem just." To make the court's position clear regarding the documents and instruments sought to be examined and reproduced, Judge Tunks stated he would not permit examination and inspection by plaintiff's attorney of any documents which, in the court's opinion, contained nothing which conceivably would be evidentiary of any issue in this main cause; where there was any question in the court's mind that the instrument was relevant and did tend to prove the issue which plaintiff sought to prove by it, the court would examine the instrument and if anything was found in it that the court conceived could possibly prove that issue, it would be made a part of the record

and the plaintiff would be permitted to examine and reproduce it, barring some other reason why it should not be reproduced.

Prior to beginning the examination of relator Kelley, respondent judge had asked respondent Glenney III's counsel to state the materiality and relevancy of the income tax returns to the trial of the main cause. Respondent's counsel orally stated that he considered the income tax returns of Mrs. Crane relevant and material to the issues in the main cause because respondent felt the returns would disclose whether or not Glenney, Jr., while he was in the employ of Mrs. Crane, had done a good job managing Mrs. Crane's estate during the period from 1939 to 1958; to show that Mrs. Crane was aware of her holdings; to show the size of her estate and how much this gift of property valued at from $2,000,000 to $3,000,000 would decrease her estate as compared with present income producing property, or small income producing property; and to place the size of the gift in proper relation to her total wealth; to show how the money belonging to Mrs. Crane that was taken by Glenney, Jr. was treated taxwise; whether it was charged off by her as a bad debt or otherwise; how Mrs. Crane treated the assets covered by the reconveyance by Glenney, Jr. to her in 1950; what contributions Mrs. Crane made to the named priest and to the church order; to compare the gift made to Glenney, Jr. by deeding him the 1409 acres with gifts made to the named priest and the church order; and whether or not Mrs. Crane treated the rental on the apartment she furnished to the named priest as a business expense or as a donation. This was the only statement as to relevancy or materiality made by respondent's attorney.

Relators did furnish to respondent the Ernst & Ernst audit (Item 2) of Mrs. Crane's business affairs made in 1950 and offered to furnish all wills and codicils (Item 4) made by Mrs. Crane since January 1, 1939 so these go out of our case. The trial judge refused to permit discovery of the income tax returns for the years 1939 through 1949.

After questioning relator Kelley fully as to the contents of the 1950 income tax return, and receiving answers to all questions asked, respondent's attorney then requested permission to examine the 1950 income tax return of Mrs. Crane and the court granted such request and ordered Mr. Kelley to deliver the return to respondent's attorney. Relators, acting through Kelley, refused to deliver the return for examination. The court held Kelley in contempt committing him to jail for a period of

30 minutes until he complied with the court's order. The court stayed the execution of his order until relators could apply to this court for relief from such order and its resulting judgment of contempt and commitment to jail. The record shows no examination by the trial judge, respondent Tunks, of the return to determine what part of same, if any, was relevant and material to the issues in the main cause, nor was any provision made to protect Mrs. Crane against the respondent's examination and reproduction of the whole of the return.

In the course of the questioning of Kelley by respondent's counsel as to the 1950 return, relator's attorney had made the point that the return showed Mrs. Crane received dividends from stocks; some interest on notes and bonds; some rents and royalties from properties other than the 1409 acres involved; some long term capital gains from other property. As to these items neither Glenney, Jr. nor the plaintiff, Glenney III could have any claim or would have any interest in them, and to require information to be given about such items would be beyond the power of the court under the provisions of Rules 167 and 737.

Rule 737, Vernon's Ann. Texas Rules Civ. Proc., reads as follows:

"All trial courts shall entertain suits in the nature of bills of discovery, and grant relief therein in accordance with the usages of courts of equity. Such remedy shall be cumulative of all other remedies. In actions of such nature, the plaintiff shall have the right to have the defendant examined on oral interrogatories, either by summoning him to appear for examination before the trial court as in ordinary trials, or by taking his oral deposition in accordance with the general rules relating thereto."

Rule 167, Vernon's Ann. Texas Rules Civ. Proc., insofar as is pertinent here provides:

"Upon motion of any party showing good cause therefor and upon notice to all other parties the court in which an action is pending may order any party to produce and permit the inspection and copying or photographing by or in behalf of the moving party, of any designated documents, papers (except written statements of witnesses) books, accounts, letters, photographs, objects or tangible things, not privileged, which constitute or contain evidence material to any matter involved in the action and which are in his possession, custody, or control. * * *"

1 Respondent attacks the jurisdiction of the court to issue its writ of mandamus herein on the ground that the order of the trial court requiring the delivery of the 1950 income tax return is an order within the discretion of the trial court, and a writ of mandamus will not be granted to correct or overturn the exercise of discretion by a trial court; that such orders are reviewable only by an appeal, and not by a mandamus; and that mandamus may not be used as a substitute for appeal. The Court of Civil Appeals has no jurisdiction to grant the relief sought by relators in this proceeding. Its jurisdiction to grant a writ of mandamus is limited to the enforcement or protection of its jurisdiction, or to compel a district judge to proceed to trial and judgment. Article 1824, R.C.S. 1925; 8 S.W. Law Journal, pp. 389, 393.

2 The bill of discovery sought in our present proceeding is for the purpose of developing evidence to be used in the trial of the main cause and not an end within itself. Under such circumstances the order of the court directing the 1950 income tax return to be delivered to respondent's counsel for inspection and reproduction was merely an incident to the trial of the main cause and is an interlocutory order and therefore not appealable. Southern Bag & Burlap Co. v. Boyd, 1931, 120 Texas 418, 38 S.W. 2d 565, 570; Rush v. Browning, 1910, 103 Texas 649, 132 S.W. 763; Equitable Trust Co. v. Jackson, 1937, 129 Texas 2, 101 S.W. 2d 552; Dallas Joint Stock Land Bank of Dallas v. State, 1940, 135 Texas 25, 137 S.W. 2d 993(6); Dallas Joint Stock Land Bank v. Rawlings, Texas Civ. App. 1939, 129 S.W. 2d 485; 15-A Texas Jur. 319, Sec. 29.

To require relators to proceed with the trial of the main cause and bring up the question of the validity of the trial court's order to turn over the income tax return to Mrs. Crane for the years 1950-1958 would be to deprive relators of any remedy from an erroneous ruling of the court. After the returns had been inspected, examined and reproduced by respondent a holding that the court had erroneously issued the order would be of small comfort to relators in protecting their papers. The question of the legality of the court's order would become an academic one, and the objection to the order would be moot.

3 The fact that the court's order could be appealed with an appeal of the main cause would not prevent the issuance of a mandamus by us at this time. This Court, in the case of Way v. Coca Cola Bottling Co., 1930, 119 Texas 419, 29 S.W. 2d 1067,

quoting from Cleveland v. Ward, 1926, 116 Texas 1, 285 S.W. 1063 says:

"We recognize the rule that mandamus does not ordinarily issue when an adequate remedy by appeal exists. In this case, however, no appeal was possible from the action of Judge Ward in refusing to go forward with the trial in his court. The right of appeal from the adverse order on the pleas in abatement and the injunction in the Dallas district court is inadequate and not commensurate with the relief to which the relators here are entitled; so that right of appeal cannot supersede the remedy of mandamus provided by statute. To supersede the remedy by mandamus authorized by the organic law, and specially provided by statute (Vernon's Ann. St. 1925, art. 1734), there must exist, not only a remedy by appeal, but the appeal provided for must be competent to afford relief on the very subject matter of the application, equally convenient, beneficial, and effective as mandamus, (citing cases). * * *"

So in the instant case an appeal being ineffective to afford the relief sought, we have jurisdiction to issue the writ of mandamus if relators are entitled to same.

4   In construing Rule 737, Vernon's Ann. Texas Rules Civ. Proc., this Court, in the case of Hastings Oil Co. v. Texas Co., 1950, 149 Texas 416, 234 S.W. 2d 389, went into the history of the discovery statutes and practice of our courts since 1846. It was there pointed out that Rule 737 was the successor to Art. 2002, R.C.S., 1925 with the last sentence of the present Rule 737 added to the statute. We held in the Hastings Oil Co. case that acting under the power conferred by Rule 737 our trial courts had the right and power to issue orders for bills of discovery "in accordance with the usages of courts of equity." Therefore, we must first determine whether or not our present proceedings are in accordance with the usages of courts of equity. Judge James P. Alexander, late Chief Justice of this Court, discusses Art. 2002. R.C.S., 1925 in an article found in 2 Texas Law Review 483. He says a pleading should be filed in the proper court and that such pleading must show equity and a necessity for its issuance; the information sought to be secured from the opposing party should be set out with particularity and in such manner that the court can see that the evidence when discovered will be material and admissible in the trial of the main cause, saying "the bill must show diligence to secure the information, and if he desires to avoid the payment of the costs on a bill of discovery, plaintiff must allege and show that

he has sought to secure the information from the defendant, and that defendant has refused or declined to give same." This discussion assumes that the bill will be a written pleading and the relevancy and materiality will be set out in such written pleading. In fact, Rule 167, after providing for the filing of a motion *showing good cause* and notice to the opposite party or parties, and setting out the things which the court may order produced and inspection permitted requires that such things must "constitute or contain evidence material to any matter involved in the action." All parties to our present cause proceed on the theory that discovery will be only as to evidence relevant and material to the main action. With this we agree, and we hold that such relavancy and materiality should be shown in the written application or petition asking for the bill of discovery, or by the pleading in the main cause. This is in accordance with the usage of courts or equity and conducive to a more orderly procedure.

Relators contend that their income tax returns are privileged documents and not subject to a bill of discovery. There is a conflict of authority on this point. We think, however, that the correct rule is that such returns, or portions thereof, are subject to discovery, provided their relevancy and materiality to the issues are shown. June v. George C. Peterson Co., 1946, 155 F. 2d 963 (10-12) ; In re Hines, 1934, 69 F. 2d 52; Paramount Film Distributing Corp. v. Ram et al, 1950, 91 Fed. Sup. 778.

5 Relators complain of the order of the respondent, Judge Tunks, requiring the 1950 income tax return to be delivered in its entirety to the respondent and his counsel for examination, inspection and copying or reproduction. We hold that under the facts of the present case it was the duty of the trial judge to examine the income tax return sought by the applicant for the bill of discovery to ascertain what parts of it are material and relevant to the main cause, and so word his order as to require only such portion, or portions, to be delivered to respondent for his discovery. See Rush v. Browning, supra; Southern Bag & Burlap Co. v. Boyd, supra, and Hastings Oil Co. v. Texas Co., supra. As said in the commentary to Rule 167, Vernon's Ann. Texas Rules Civ. Proc., p. 508: "* * * And where the documents contain information which the movant should not see, the order should in some way afford his adversary proper protection as by requiring inspection in the presence of his representative or by some other appropriate device. Generally speaking, the court, should, however, be guided by the underlying purpose and objective of the rules, and allow discovery

in advance of trial where possible. * * *'' On failing to examine the income tax return and to separate the revelant and material parts from the irrelevant and immaterial parts the trial judge herein abused his discretion in ordering the income tax return to be delivered to respondent, Glenney's attorney, for inspection.

**6** While it is the general rule that mandamus will not issue to control the action of an inferior court or public officer in a matter involving discretion, the writ may issue in a proper case to correct a clear abuse of discretion. Southern Bag & Burlap Co. v. Boyd, supra; Womack v. Berry, 1956, 156 Texas 44, 291 S.W. 2d 677, 682 (2, 3) and (4).

In the main, we think the court's order for discovery was a correct one. Under the facts and circumstances of this case we do not hold that the trial judge abused his discretion in issuing his order of November 5, 1958. We do hold that the trial judge abused his discretion in ordering an inspection of Mrs. Crane's 1950 income tax return in its entirety, and without the judge inspecting the return so as to determine what portions were relevant and material to this cause. We hold that relators should be permitted to have a representative present at all times while respondents are examining, copying and reproducing the documents ordered turned over to them; and that as soon as the examination, copying and reproduction is completed, the documents be returned to relators to be held by them subject to the further order, or orders, of the trial court in the disposition of the main cause. Southern Bag & Burlap Co. v. Boyd, supra.

Upon a propert showing of the relevancy and materiality of the other items for which discovery is sought, the court may, after determination of the relevancy and materiality order a discovery of such portions as he may deem relevant and material to the issues in the main cause, and under proper orders to protect relators against any disclosure of other portions of such items as are not relevant and material.

We are certain that the trial judge will proceed in accordance with the law as we have set it out herein without a writ of mandamus, but in the event he should fail to so proceed the clerk will issue the necessary writ to insure that this opinion is effective.

Costs are charged against respondent D. J. Glenney III.

Opinion delivered October 28, 1959.

MR. JUSTICE CALVERT, joined by JUSTICES WALKER and GREENHILL, concurring.

Relators seek by writ of mandamus to compel Judge Tunks to vacate or revise two orders. The first is the order entered on November 5, 1958 by and under the terms of which relators were required to produce before the court the records, writings and information enumerated in the majority opinion as items (1), (2), (3), (4), (6) and (7). The second is the order made in open court on November 12, 1958 by which relator Kelley was directed to deliver Mrs. Crane's 1950 income tax return to Glenney's counsel for examination and copying. I agree that the November 5 order should not be vacated and that the November 12 order should be, but I do not agree with some of the broad language and incidental holdings in the majority opinion.

Relators contend that the trial court abused its discretion in entering the order of November 5, 1958 directing the production of the various documents in court when there was no pleading, either in the discovery proceeding or in the main suit, that the documents contained evidence relevant and material to the plaintiff's claims, without adequately protecting Mrs. Crane's right against improper inspection. It is then argued that written pleading showing relevancy and materiality of the documents was a necessary predicate for the order and that no such written pleading had been filed. The majority have agreed with that argument. They state: "* * * we hold that relevancy and materiality *must* be shown in the written application or petition asking for the bill of discovery, or by the pleading in the main cause." Having thus held that written pleadings showing relevancy and materiality are a *mandatory* prerequisite to an order in a discovery proceeding requiring the production of documents in court, the majority then hold, nevertheless, that the failure by Judge Tunks to require such written pleadings before entering the order of November 5 was not an abuse of discretion. The two holdings seem to me to be contradictory. I agree that the entry of the order of November 5 did not constitute an abuse of discretion, but I do not agree with the majority's holding that written pleadings are a mandatory prerequisite to an order requiring the production of documents in court where there is no showing that the production of such documents would be unduly expensive or otherwise burdensome.

The other order which relators seek to have vacated or revised is the order directing delivery to Glenney's counsel of

the 1950 income tax return for examination and copying. My agreement with the majority that the entry of that order constituted an abuse of discretion is not based upon the failure of the judge to inspect the return before ordering it delivered up for examination and copying, however more cautious and desirable that might have been, but is based upon the fact that the record before us shows clearly that the return contains much information of a purely private nature which is not relevant and material to any issue in the main case. In this state of the record it would be an unreasonable invasion of Mrs. Crane's right of privacy to require her to disclose information concerning strictly personal affairs to Glenney's counsel.

The final draft of Glenney's petition in the main suit raised, primarily, two issues: (1) whether his father's deed to Mrs. Crane was voidable because it was procured by relator Kelley by fraud, coercion and duress through threats to have the grantor indicted, prosecuted and confined in the penitentiary for forgery, and, alternatively, (2) whether the deed was intended to be a mortgage to secure an indebtedness claimed by Mrs. Crane. Mrs. Crane's answer is quite lengthy and injected a number of other issues into the case, including issues (1) that the deed dated October 15, 1940 was forged and altered by Glenney's father and was void; (2) that the execution and delivery of the deed to Glenney's father was procured by fraud; (3) that the deed was delivered to Glenney's father to be held by him in trust and returned upon request to the grantor;[1] (4) that in breach of his duty to disclose to Mrs. Crane his claim of interest under the 1940 deed Glenney's father had concealed his claim and had thus enabled himself to draw some $29.000 in salary from 1950 to 1958 and was therefore estopped to claim that the 1950 deed was void, or was but a mere mortgage, or that he had any interest in the land described in the deed. and that Glenney. not being an innocent purchaser, was likewise estopped. In pleading facts surrounding the execution of the 1950 deed, Mrs. Crane also pleaded that Special Agents of the Treasury Department had advised Glennev's father at a conference in her apartment that certain checks drawn on her account during the period of time he was attending to her business affairs had been forged.

I am satisfied that Glenney's counsel was entitled to information contained in the 1950 income tax return relevant and

---

1.—These defenses are met by Glenney's allegations that the 1940 deed was a valid deed of gift for personal services of a highly confidential nature performed by him for Mrs. Crane.

material to the issues set out above. Relators question that a plaintiff is entitled to a discovery of documentary evidence which is only relevant and material to a defensive issue. Their doubt should be dispelled by the very wording of Rule 167, T.R.C.P., which provides for the inspection and copying of documents, etc. "which constitute or contain evidence material to any matter *involved in the action.*" See also "The Bill of Discovery" by Franki, 13 T.B.J. 447, Vernon's Annotated Rules of Civil Procedure, Vol. 1, p. 503, where it is said: "The real object of the bill is to compel the opposite party to disclose such facts within his knowledge as are material to establishment of plaintiff's cause of action, or the defendant's defense, in order that plaintiff or defendant, as the case may be, may use this information as evidence upon the trial of the main case." But while counsel was entitled to examine and reproduce information from the tax return bearing on all issues, he certainly was not entitled to examine and reproduce information of a highly personal and private nature which could not conceivably be relevant and material to the issues. The sworn application for writ of mandamus states that the income tax return contains information and data showing Mrs. Crane's income from many sources, "including interest, dividends on corporate stocks, oil and gas royalties, bonuses and rentals from properties in which Plaintiff-Relator (sic) Glenney neither has nor claims any interest in the main suit." That statement stands undenied and we may accept it as true. That information could not be relevant and material to any issue in the main suit. The return may contain much other information which is equally irrelevant and immaterial. It was a clear abuse of discretion to order that the entire return be delivered to Glenney's counsel for examination and reproduction, and mere inspection or examination of the return by Judge Tunks before ordering it delivered to Glenney's counsel could not make it any less so.

No question other than those above discussed is properly before us. We cannot know what ruling Judge Tunks will make with respect to the other documents and information he has ordered produced in court and we cannot by writ of mandamus supervise the exercise of discretion by Judge Tunks in his rulings on the relevancy and materiality of information contained in each of the documents he has ordered produced in court.

I agree with the majority's holdings on the other questions discussed in the opinion.

Opinion delivered October 28, 1959.

MR. JUSTICE SMITH dissenting.

I respectfully disagree with both the presently designated majority opinion written by Justice Griffin and the concurring opinion by Justice Calvert. The order of November 12, 1958, involved the exercise of judicial discretion. This Court will not issue writs of mandamus to control or revise the exercise of discretion by trial courts in the performance of purely judicial as distinguished from ministerial acts. Iley v. Hughes, 158 Texas 362, 311 S.W. 2d 648, and cases therein cited. No clear right has been shown authorizing the granting of the writ of mandamus. Relators' motion for leave to file petition for writ of mandamus, filed December 4, 1958 and later granted, states that this is a matter of great public concern. I do not agree that it is a matter of great public concern. Therefore, the case should take its regular course by appeal to the Court of Civil Appeals.

.   The relator, Kelley, after being assured by the trial court that he would be given an opportunity to file an application for writ of habeas corpus without having to go to jail, and only then, refused to obey the order of the court wherein he, Kelley, while testifying as a witness, was directed to deliver Relator Crane's 1950 income tax return (copy) for inspection by respondents' attorney. All of this occurred in open court in the course of a judicial proceeding and while Relator Kelley, the attorney for Relator Crane, was testifying as a witness. The record shows that prior to such refusal, the trial court had announced a course of procedure that would be followed during the hearing in the discovery proceedings. The court heard evidence as to the relevancy of the income tax returns for the years 1939-1949. The court ruled that such returns were not material, but, in accordance with his previous announcement that all documents excluded would be sealed and later examined by the appellate courts in case of appeal, the court ordered the 1939-1949 returns (copies) impounded. Now, had the trial court made the same ruling in regard to the 1950 returns, no doubt the court would have followed the same procedure. No doubt, the respondents would have perfected an appeal as to such adverse ruling, and the 1950 returns would have been opened for inspection by the appellate courts. Nothing is kept secret from the litigants in the course of a judicial proceeding. Therefore, the respondents would have ultimately had an opportunity to inspect the 1950 returns. Regardless of whether the trial court actually examined the 1950 returns or not, he did hear evidence at great length on the question of admissibility of the document, and then ruled that the 1950 return was material and ruled Mr. Kelley should

deliver the returns for inspection. To issue a writ of mandamus will be setting a dangerous precedent. In the future, litigants will constantly attempt to halt the trial of cases and bring matters involving strictly judicial acts and rulings to this court by way of mandamus. This court has held repeatedly that it will not issue writs of mandamus to control or revise the exercise of discretion by trial courts in the performance of purely judicial as distinguished from ministerial acts.

This proceeding has been converted from a proceeding by writ of habeas corpus to a proceeding by way of writ of mandamus. Perhaps, strictly speaking, if this were a habeas corpus proceeding, the trial judge might be required to examine the returns before punishing Relator Kelley for an act of contempt in the court's presence. It is my opinion, however, that it is immaterial whether the court inspects the instrument or not. But, should the writ of mandamus be granted and the trial court inspects the instrument and then rules that it is admissible in its entirety, and Mr. Kelley still refuses to deliver the document, he, Kelley, would be guilty of contempt. Mandamus simply will not lie to correct a claimed erroneous ruling or order of the trial court where the order, as here, involved solely the exercise of judicial discretion. This is a court of law. We do not ordinarily pass upon, in the first instance, the question of admissibility of evidence. The trial court has carefully protected relators' rights requiring a clear showing of materiality and relevancy prior to ordering that the 1950 return be produced for inspection. In a civil action, such as we have here, there can be no basis for the claim that the 1950 tax return (copy) is a privileged document. If relevant matters appear in the income tax returns, and the trial court in this instance has found that such is the case, then the respondents are entitled to see such returns and use same.

Judge Tunks' gracious act in suspending the passing of sentence for contempt cannot amount to an abuse of discretion. He did not act through fraud, caprice, or by a purely arbitrary decision, and without reason.

Relators' petition for writ of mandamus should be refused, or, in the alternative, the opinion of this Court should be limited to a holding that before sentence for contempt may be effectively carried out, the Court should inspect the instrument before making a final ruling.

Opinion delivered October 28, 1959.