**H. S. GONZALES et al., Appellants,**

v.

**Joe STEVENS, Assessor-Collector of Taxes, Appellee.**

**No. 416.**

Court of Civil Appeals of Texas.

Corpus Christi.

April 25, 1968.

Rehearing Denied May 9, 1968.

William R. Edwards, David L. Perry, Corpus Christi, for appellants.

Crawford C. Martin, Atty. Gen. of Texas, W. O. Shultz, Asst. Atty. Gen., Austin, Franklin Smith, County Attorney, Corpus Christi, for appellee.

## OPINION

### PER CURIAM.

This appeal is from a judgment rendered after non-jury trial refusing writ of mandamus to compel appellee, defendant below, as registrar of voters of Nueces County, Texas, to issue Voter Registration Certificates to appellants, plaintiffs below.

The trial court filed findings of fact and conclusions of law. The relief sought by appellants was denied them primarily because (1) they had not applied for registration in a manner prescribed by Article 5.13a, Texas Election Code, V.A.T.S.; (2) they failed to show that they could not obtain Voter's Registration Certificates by applying for same in person, by mail, or through a person authorized to act for them under Article 5.13a(2), Texas Election Code; and (3) they failed to show that they had exhausted their right to appeal as provided by Article 5.17a, Texas Election Code.

Each appellant herein completed or caused to be completed an application for a Voter Registration Certificate on the form prescribed by the appellee. Five of the appellants delivered their application forms to one Paul Montemayor who personally handed them to the appellee-registrar on November 7, 1967. Three of the appellants delivered their application forms to Montemayor who mailed the same to appellee; and they were received by him on or about November 7, 1967. Montemayor is not the husband, wife, son, daughter, father or mother of any of the appellants and therefore is not related to them within the degree provided for by Article 5.13a, Sec. 2, Texas Election Code. Appellee refused to issue Voter Registration Certificates to the appellants.

In connection with the applications which were mailed, Montemayor wrote a cover letter to appellee, dated November 6, 1967, which read in part as follows:

"Each of these Applicants has requested me to forward his completed application to you, and I am happy to comply with his request. If, for any reason, you feel that it is necessary to deny registration to any or all of these Applicants, I would very much appreciate it if you would write a letter to me, and a letter to each of the Applicants involved, notifying us

of that fact, and of the reasons for your action.

"Thank you very much for your assistance. Of course, I and all of the Applicants, understand that whatever action you take is taken by you on the basis of the Voter Registration Law and the legal opinions which you have received as to its proper application."

On November 8, 1967, appellee wrote Montemayor a letter with copies to the various applicants, which stated in part the following:

"Attorney General's Opinion No. M.–145, dated October 11, 1967, provides that the registrar is not authorized to accept any applications for a Voter Registration Certificate mailed or delivered to him by someone other than the applicant himself or the husband, wife, father, mother, son or daughter of the applicant. This rule excludes persons from accepting the completed applications from other persons and then mailing or delivering them either singly or in bulk quantities to the registrar.

"I herewith return the applications submitted by you, for delivery to the persons involved, so that they may take proper action to obtain a Voter Registration Certificate."

Appellants' suit for mandamus was filed on November 13, 1967. Regular citation was issued and served on the defendant on the same date. Appellee filed original answer on November 20, 1967. The case was tried before the court on November 27, 1967, and was taken under advisement. Judgment was rendered and entered on December 18, 1967, denying appellants a writ of mandamus and ordering that they take nothing by their suit. The record was filed in this Court on February 16, 1968. The case was set for submission on May 23, 1968, but was advanced on appellants' motion, filed after notice of said setting, and was heard on April 16, 1968.

Appellants assert four points of error as follows:

## "FIRST POINT OF ERROR

"Plaintiffs whose applications were mailed to Defendant complied with the requirements of the law, and Defendant had a ministerial duty to issue Voter Registration Certificates, and the Trial Court erred in ruling to the contrary.

## SECOND POINT OF ERROR

"Plaintiffs whose applications were delivered to Defendant personally complied with the requirements of the law, and Defendant had a ministerial duty to issue Voter Registration Certificates, and the Trial Court erred in ruling to the contrary.

## THIRD POINT OF ERROR

"The Trial Court erred in holding that Plaintiffs had violated the 'agency' provisions of the Election Code and that they must therefore be denied registration.

## FOURTH POINT OF ERROR

"The Trial Court erred in holding that Plaintiffs had sufficient remedies other than mandamus."

In reply to appellants' points, appellee urges two counterpoints, reading as follows:

## "COUNTERPOINT ONE

"The Trial Court properly held that appellants have not applied for registration in a manner prescribed by Article 5.13a, Texas Election Code.

## COUNTERPOINT TWO

"The Trial Court properly dismissed appellants' petition for mandamus for the reason that appellants failed to plead or prove that they had no other available remedy."

It is apparent that appellee's counterpoint one is in reply to appellants' first three points, and that appellee's counterpoint two is in reply to appellants' point four.

We will first consider appellants' first three points along with appellee's counterpoint one.

Opinion No. M–145 of the Attorney General of Texas, upon which the appellee-registrar relied in refusing to issue Voters Registration Certificates to appellants, is as follows:

"October 11, 1967

"Honorable John L. Hill
Secretary of State
State of Texas
Austin, Texas

Opinion No. M–145

Re: Whether under the Texas Election Code A County Tax Assessor-Collector, acting in his capacity as the registrar of voters in his county, is authorized to accept applications for voter registration certificates mailed or delivered to him by someone other than the applicants themselves or the husband, wife, father, mother, son or daughter of an applicant.

"Dear Mr. Hill:

"In a recent letter to this office you requested our opinion in regard to the above referenced matter. We quote from your letter as follows:

'The Tax Assessor-Collector of Hidalgo County has asked me to request a ruling on whether the Assessor-Collector, as the registrar of voters in his county, is authorized to accept applications for voter registration certificates which are mailed to him in a group, indicating that they were mailed by someone other than the applicants themselves. A second question, which is an extension of the first, is whether the Assessor-Collector is authorized to accept applications which are brought to his office in a group for delivery in person.

'It is my understanding that the pertinent statute, Article 5.13a of the Texas Election Code, has been given different interpretations by the various Assessor-Collectors of the State. I am requesting a ruling by your office in pursuance of the responsibility placed upon me by the 1967 amendment to Article 1.03 of the Election Code to obtain and maintain uniformity in the application, operation and interpretation of the election laws.'

"Vernon's Civil Statutes, Election Code, Article 5.13a, provides as follows:

'(1) A person may apply for registration in person or by mail as provided herein. When an applicant for registration applies in person, he shall furnish the registrar the necessary information to enable the registrar to fill out the blanks in the registration certificate, and the registrar shall immediately make out and deliver a registration certificate to the applicant, if he is entitled to register. An application made by mail must be made upon forms prescribed by the registrar and upon which forms the applicant shall supply the information necessary for registration as prescribed in Section 47a of this Code. The application form shall contain the following statement: 'I understand the giving of false information to procure the registration of a voter is a felony.' The application shall be signed by the applicant or his agent.

'When a properly executed application is received by the registrar, the registrar shall make out a registration

certificate and shall mail the registration certificate to the voter for whom it is issued at his permanent address; or, if the applicant is temporarily residing outside the county and requests that the certificate be mailed to the temporary address, the registrar shall mail it to the temporary address; or the registrar shall hold the certificate to be delivered to the applicant in person. The application shall be deemed to have been placed in the mail on or before the last day of the registration period, as shown by the postmark on the envelope, and was delivered to the registrar on or before the fifth day following the close of the registration period. Within the meaning of this Section, the application is delivered when it is actually placed into the possession of the registrar or his duly authorized agent by a post office employee, or is deposited into the registrar's mail box, or is left at the usual place of delivery for the registrar's official mail.

'The registrar shall file and preserve all applications received by mail for a period of two years.

'(2) The husband, wife, father, mother, son, or daughter of a person entitled to register may act as agent for such person in applying for registration, without the necessity of written authorization therefor, may sign for the applicant when application is by mail, and may receive the registration certificate. However, none of the above may act as agent unless he is a qualified elector of the county. No person other than those mentioned in this subsection may act as agent for a person in applying for registration.

'Except as herein permitted, a person who willfully acts as agent for another in applying for registration or in obtaining a registration certificate is guilty of a misdemeanor and upon conviction is punishable by a fine of not less than Fifty Dollars ($50) nor more than Five Hundred Dollars ($500).

'(2a) Nothing in this Section shall be construed to prevent the registrar or a deputy from rendering aid to an applicant who is physically unable to complete the application or to an applicant who requires assistance in completing the application by reason of his inability to read and write the English language.

'(3) A registrar of voters who knowingly issues a registration certificate to a person other than the applicant or his lawful agent, or who knowingly mails or delivers a registration certificate to a person other than the applicant or his lawful agent, is guilty of a misdemeanor and upon conviction shall be immediately removed from office and fined not less than One Hundred Dollars ($100) nor more than One Thousand Dollars ($1,000).'

"This statute, enacted in 1966 after payment of the poll tax as a requirement for voting had been declared invalid, was an adaptation of the pre-existing statute on modes for payment of the poll tax. As last amended in 1963, that statute (Article 5.11 of the Election Code) read as follows:

'The poll tax must be paid by the taxpayer in person or by a remittance of the amount of the tax through the United States mail to the county tax collector, accompanying the remittance with a statement in writing, signed by the taxpayer, showing all the information necessary to enable the tax collector to fill out the blank form of the poll tax receipt. When payment is made by mail, the tax collector shall mail the receipt to the taxpayer at the taxpayer's permanent address, or, if requested to do so by the taxpayer at such other address as the taxpayer directs, or shall hold the receipt to be delivered to the taxpayer in person. The husband or wife, father, mother, son, or

daughter of a taxpayer may pay the tax for the taxpayer in either of the modes herein authorized, and may sign for the taxpayer when payment is by mail, and may receive the poll tax receipt issued to the taxpayer. Except as herein permitted, it shall be unlawful for any person to pay the poll tax of another or to act as agent for another in payment of the tax. It shall be unlawful for the tax collector to mail or deliver a poll tax receipt to any person other than the taxpayer or a person lawfully acting in his behalf in the payment of the tax.

'The tax collector may at such places as shall in his discretion be necessary or advisable, have a duly authorized and sworn deputy for the purpose of accepting poll taxes and giving receipts therefor, and issuing exemption certificates.'

"The authorized modes are (1) application in person by the voter or by someone within the classes of relatives permitted to act as the voter's agent, and (2) written application by mail, signed either by the voter or by an authorized relative. Subsection (2) of Article 5.13a, quoted above, makes it a misdemeanor for a person not authorized by the statute to willfully act as the agent for another person in applying for registration or in obtaining a registration certificate. We cannot find any basis in the language of the present statute or of its immediate precursor for sanctioning either personal delivery or delivery by mailing of an application to the registrar by some third person not within the classes of persons who may act as agent. It would be unreasonable to give a construction to the statute which allowed third persons to collect bundles of applications and mail them to the registrar while not allowing them to deliver the bundles in person, since personal delivery by the intermediary would provide more safeguards against fraud and abuse than would mailing. The statute very plainly does not authorize personal delivery by third persons. We think this is a clear indication that the Legislature did not intend to permit an applicant for registration to turn over his application to a third person for mailing to the registrar. The right to vote is a personal right which accrues to a person on an individual basis and, therefore, the act of qualifying to exercise the voting right by registration is logically an act which must be personally and individually performed except as this rule is clearly modified by law. Article 5.13a specifically allows certain members of the immediate family of an applicant for registration to act as the applicant's agent. It is our opinion that the present statute wherein it says, 'a person may apply for registration in person or by mail as provided herein' will permit of no construction save that the applicant must personally and individually deliver his application for registration into the hands of the registrar or must personally and individually deliver his application into the custody of the United States mails. The members of the applicant's family enumerated in the statute may perform one of these functions for the applicant. The registrar is under no duty to accept any application, either in single or multiple numbers, which is delivered or mailed to him by a person other than the applicant or a person who is specifically authorized by statute to act as the applicant's agent.

"In construing the Texas Election Code, whether or not considered ambiguous, we are at liberty to make use of construction aids as set out in Sec. 3.03 of the Code Construction Act, Acts 60th Legislature 1967, Regular Session, chapter 455, page 1036.

"The background history of Article 5.13a, and particularly the change made in the predecessor statute in 1963, sheds light on the legislative intent in regard to application by mail.

"Under the Terrell Election Law of 1905, the poll tax of a person not living

in a city of 10,000 or more inhabitants could be paid either 'by him in person or by someone duly authorized by him in writing to pay the same.' The tax of a person living in a city of 10,000 or more had to be paid in person, except that it could be paid 'through an agent authorized by him in writing' if he was going to be absent from the county during the entire period for paying the tax (October through January). Neither the taxpayer himself nor his agent could pay the tax through the mail.

"In 1921, with the advent of woman suffrage, the law was changed to permit the husband or the wife to pay the poll tax of the other.

"In 1929, a provision was added to permit a property taxpayer residing either within or without a city of 10,000 who had a poll tax assessed against him to pay the poll tax by mail along with the property tax if he was paying his property tax by mail. An amendment in 1941 extended the authorization for payment by mail to any person owing the poll tax, whether liable for a property tax or not.

"The Election Code in 1951 continued the blanket authorization for payment either in person or by mail for all persons subject to the poll tax, and also extended to residents of cities of 10,000 or more the unconditional authorization for payment through an agent which had theretofore been accorded only to persons not living in cities of 10,000 or more. As enacted in 1951, Article 5.11 of the Election Code read:

'The poll tax must either be paid in person or by someone duly authorized by the taxpayer in writing to pay the same, and to furnish the Collector the information necessary to fill out the blanks in the poll tax receipt. Such authority and information must be signed by the party who owes the poll tax, and must be deposited with the Tax Collector and filed and preserved by him. A taxpayer may pay his poll tax by a remittance of the amount of the tax through the United States mail to the County Tax Collector, accompanying said remittance with a statement in writing showing all the information necessary to enable the Tax Collector to fill out the blank form of the poll tax receipt, which statement must be signed by the party who owes the poll tax under oath, but the husband may sign for the wife and in like manner the wife, may sign for the husband, * * *.'

"The law remained in this form without material change until 1963. [Under the authorization for payment of the poll tax through an agent, it became common practice in voter registration drives for persons acting in behalf of civic or political organizations and groups to solicit and obtain applications from numerous voters in bulk quantities.] Sometimes the agents delivered the applications to the tax collector in person, and sometimes they mailed them to the tax collector. The method of delivery and the number mailed or delivered at one time were unimportant; the distinctive characteristic of the agency arrangement was that the agent obtained intermediate possession of the application between the voter and the tax collector. In actual practice, the most common form of agency occurred in instances where an individual or a group, acting in a solicitation role, obtained and transmitted multiple numbers of applications to the tax collector at one time.

"In 1963 the Legislature amended the statute to elimate registration through an agent, except through a spouse, a parent, or a child of the voter. This change in the law must be taken as legislative disapproval of the agency system, which as we have said, was characterized mainly by a third person's intermediate possession of the voter's application for registration. We believe this was the very thing that the Legislature was seeking to eliminate by the amendment. To construe the amended law as permitting es-

sentially the same arrangement does violence to the apparent legislative intent in making the change. In fact, a system which would permit third persons to take possession of the applications under the present statute would not only continue the features of the former agency system which the Legislature evidently found to be objectionable, but in many instances would remove one of the safeguards of the former system—revelation of the identity of the intermediary.

## SUMMARY

"A County Tax Assessor-Collector is not authorized to accept applications for voter registration certificates mailed or delivered to him by someone other than the applicants themselves or the husband, wife, father, mother, son or daughter of an applicant."

We agree with the construction given Art. 5.13a, Texas Election Code, by the Attorney General of Texas. The 1966 amendment to Art. 5.13a, particularly when considered in the light of the 1963 amendment to Art. 5.11, Texas Election Code, shows a legislative disapproval of the agency system which existed prior to such amendments. More particularly, a legislative intent is shown to eliminate intermediate possession of a voter's application for registration.

Article 5.17a, Texas Election Code, effective October 1, 1966, reads as follows:

"Challenge of registration; appeal

(1) Challenge of applicant. Any person applying for registration may be challenged by the registrar or deputy taking his application or by any registered voter of the county. If after hearing and considering the challenge the officer taking the application is satisfied as to the applicant's entitlement to registration, he shall register the applicant, but if not so satisfied, he shall refuse to register the applicant. If refusal has been by a deputy registrar, the applicant may appeal to the registrar, who shall decide the challenge within seven days. When the registrar refuses to register an applicant, the applicant may appeal from the decision of the registrar to a district court of the county within thirty days after the registrar's decision, and the decision of the district court shall be final.

(2) Challenge of registered voter. Any registered voter shall have the right to challenge the registration of any other registered voter in his county by filing with the registrar of voters a sworn statement setting out the grounds for such challenge. The registrar shall give notice to the person whose registration has been challenged, and a hearing shall be held and a ruling made thereon. Either party to the controversy may appeal from the decision of the registrar to a district court of the county of registration within thirty days after the registrar's decision, and the decision of the district court shall be final. A challenged voter may continue to vote until a final decision is made canceling his registration.

(3) Jurisdiction of district court; trial of appeal. The district courts of this State shall have jurisdiction to hear and determine appeals from decisions of the registrar refusing an application for registration and from decisions of the registrar either canceling or refusing to cancel a registration. The trial in the district court shall be de novo. The court shall give priority to the appeal if an election is pending within sixty days. Acts 1951, 52nd Leg., p. 1097, ch. 492, art. 49a, added Acts 1966, 59th Leg., 1st C.S., p. 1, ch. 1, § 2."

In the instant case the appellants have deliberately sought to inject an intermediary between themselves and the registrar. The intermediary thus secured possession of all the appellants' applications for registration as voters, mailed some of them and personally presented the others to the registrar. Under Art. 5.17a, Texas Election Code, the registrar had the right to challenge the persons applying because of

**702**

the manner in which the applications were presented to him. Under the statute the registrar was authorized to satisfy himself as to each of the appellants' entitlement to registration. After appellee, as registrar, returned the applications which had been mailed to him and refused to accept those tendered by the intermediary, appellants did not present any further request or evidence to the registrar; nor did they ask him for a hearing; nor did appellants appeal the decision of the registrar to the district court as is provided in Art. 5.17a, Texas Election Code. Instead they filed suit for mandamus to compel issuance of Voter's Registration Certificates by the registrar.

In connection with the points now under consideration the determinative question is not whether each appellant furnished the information in the applications; nor whether the applications were properly executed nor whether the applications were received by the registrar. Instead the essential inquiry is whether appellants have followed the "mode of applying for registration" as is provided in Article 5.13a, Texas Election Code. We hold that the trial court correctly concluded that they had not. The provisions of Art. 5.13a concerning the persons who may lawfully act as agent for another in applying for registration or in obtaining a Voter's Registration Certificate are explicit and definite. Only the husband, wife, father, mother, son or daughter (who are themselves qualified electors of the County) of a person entitled to register as a voter may lawfully act as that person's agent in applying for or in obtaining a Voter's Registration Certificate. Montemayor, the intermediary here, was not a lawful agent to act for appellants under the circumstances shown to exist, and the trial court properly so concluded. The trial court correctly held that appellants had not applied for registration certificates in a manner prescribed by Art. 5.13a, Texas Election Code, and that appellee did not have a ministerial duty to issue such certificates to them under the circumstances.

Appellants' points one, two and three are overruled.

We pass now to consideration of appellants' point four and appellee's counterpoint two concerning the remedy of mandamus.

It is clear from the provisions of Article 5.17a, Texas Election Code, hereinabove quoted in full, that the legislature has afforded the remedy of appeal from a decision of the registrar refusing to register an applicant. It is well settled that mandamus will not issue to aid one who has a right of appeal. Ben C. Jones & Co. v. Wheeler, 121 Tex. 128, 45 S.W.2d 957 (1932); Screwmen's Ben Ass'n v. Benson, 76 Tex. 552, 13 S.W. 379 (1890); Aycock v. Clark, 94 Tex. 375, 60 S.W. 665 (1901). Where the relief sought could have been obtained by taking the appeal provided by statute, mandamus cannot take the place of appeal. Palmer Pub. Co., v. Smith, 95 S.W.2d 713 (Tex.Civ.App., Texarkana 1936), affirmed, 130 Tex. 346, 109 S.W.2d 158 (1937). Where one fails or refuses to pursue those remedies provided by law, he will not be aided by issuance of a writ of mandamus. Arnold v. City of Sherman, 244 S.W.2d 880 (Tex.Civ.App., Dallas 1951, wr. ref.). Ordinarily, a writ of mandamus must be the last resort, and it will be refused if there is another remedy which is effective and complete. Manion v. Lockhart, 131 Tex. 175, 114 S.W.2d 216 (1938). When the registrar, appellee here, refused to register the appellants, their remedy was by way of appeal to the district court to review the action of appellee. Article 5.17a, Texas Election Code; Wyatt Metal & Boiler Works v. Lipscomb, 87 S.W.2d 331 (Tex.Civ.App., Texarkana 1935, wr. ref.).

Under their fourth point appellants argue that an appeal under Art. 5.17a is not a proper or adequate vehicle for determining a dispute concerning registration, since it denies the appellate courts of this State the power to review the legal questions involved; that an appeal to the district court is not equally as convenient,

beneficial and effective as mandamus, and does not bar issuance of mandamus in this case. Appellants' position here is not well taken. See Texas Farm Bureau Cotton Ass'n v. Lennox, 296 S.W. 325, 327 (Tex. Civ. App., Texarkana 1927, wr. ref. n. r. e.); Moore v. Clem, 295 S.W. 941 (Tex.Civ. App., Dallas 1927, wr. ref. n. r. e.); Plummer v. VanArsdell, 117 Tex. 200, 299 S.W. 869 (1927). In *Lennox* the court held in part as follows:

"It is well settled, in the text-books and in numerous cases, that a party to a suit has no vested right to an appeal from one court to another, and that, ordinarily, it is not a valid legal objection that such a privilege, once granted, may be taken away by the Legislature. The Legislature undoubtedly, as is conceded, has the power not only to deprive a party to a suit of the privilege of appeal, but to deprive the Courts of Civil Appeals of jurisdiction to entertain and revise such appeal merely from an order for retrial of a case. There is no constitutional restriction in that respect."

It should also be noted that the Supreme Court of the United States has recognized that a State is not required by the Federal Constitution to provide appellate review. See McKane v. Durston, 153 U.S. 684, 687–688, 14 S.Ct. 913, 915, 38 L.Ed. 867; Griffin v. People of the State of Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed 891; Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527.

In support of their argument that mandamus will be barred by available appeal only where the appeal process is "equally convenient, beneficial and effective as mandamus," appellants rely on the cases of Fulton v. Finch, 162 Tex. 351, 346 S.W.2d 823 (1961); Crane v. Tunks, 160 Tex. 182, 328 S.W.2d 434 (1959); Winfrey v. Chandler, 159 Tex. 220, 318 S.W.2d. 59 (1958); Love v. Wilcox, 119 Tex. 256, 28 S.W.2d 515, 70 A.L.R. 1484 (1930); Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063 (1926). These cases are clearly distinguishable from the instant one. There is no showing here that the remedy by way of appeal to the district court from the decision of the registrar is not full, adequate and complete. Appellants did not attempt to pursue their statutory right of appeal to the district court. If they had done so and insisted upon an early determination, as they had a right to do, this matter would have been adjudicated long ago in the district court. Since appellants have elected not to pursue their statutory appeal, we need not express any opinion as to any further remedy or relief which might be available to them had the decision of the district court been adverse to them. Regardless of further legal remedies or absence of them, it is apparent that appellants had it within their power to secure registration certificates at all times before January 31, 1968, by properly applying in person, by mail or through a lawful agent, and to thereby overcome the challenge made by the registrar. Appellants' point four is overruled.

The judgment of the trial court is affirmed.