**TEXHOMA STORES, INC., Appellant,**

v.

**AMERICAN CENTRAL INSURANCE CO.,
Appellee.**

No. 186.

Court of Civil Appeals of Texas.

Tyler.

Jan. 6, 1966.

Rehearing Denied Jan. 27, 1966.

Wm. Andress, Jr., Andress, Woodgate, Richards & Condos, Dallas, for appellant.

Webber W. Beall, Jr., Touchstone, Bernays & Johnston, Dallas, for appellee.

MOORE, Justice.

This is an appeal from an order dismissing appellant's suit "with prejudice" because appellant's attorney refused to obey the order of the trial court directing him to deliver appellant's income tax returns in their entirety for admission into evidence. Appellant, Texhoma Stores, Inc., brought this suit against American Central Insurance Co. upon a policy of fire insurance in the amount of $85,000.00 alleging a loss of $95,796.45 as a result of a fire in one of its stores. The insurance company denied liability contending that the insured, through its officers, agents and representatives, James Melton, Sr., Secretary-Treas-

urer and Ralph Ross, assistant store manager, voluntarily and intentionally set fire to the property and also that they, along with Mrs. James Melton, Sr., President of the corporation, misrepresented material facts as to the value of the stock of merchandise so that it was over-insured. Prior to the date of trial, the insurance company served a subpoena duces tecum upon Mrs. Melton requiring her to produce the corporate income tax returns for the year 1960–1961. Trial was before a jury. Mrs. Melton was the first and only witness to testify. Upon direct examination, she testified that as of December 31, 1961, she owned 400 of the 500 shares of capital stock of the corporation and that her husband did not own any stock. Upon objection of counsel for the appellee, the court withdrew from the consideration of the jury her testimony relating to the ownership of the stock by her husband ruling that the records of the company would be the best evidence. Upon cross examination, counsel for appellee made demand for the corporate income tax returns which were produced, and submitted to the trial judge for examination. In submitting the returns, counsel for appellant while contending that the returns were privileged, offered to allow the same to be examined by the trial court, stating that appellees could have whatever information the court found to be material and relevant. Thereupon, counsel for appellee listed numerous items of information which they desired from the returns and the trial judge, with the assistance of counsel for the appellant, supplied the requested information covering the inventory of the merchandise, net profit, salaries, taxable income and the amount of income taxes paid. During the process of this discovery procedure which was conducted outside the presence of the jury, the trial judge interrupted and the following colloquy ensued between the court, Mr. Andress, counsel for appellant, and Mr. Touchstone, counsel for appellee:

"*THE COURT*: Wait a minute. The Supreme Court case here says it is discretionary with the Judge, to let what he thinks is necessary to the case to go in—

"* * *

"*THE COURT*: Now, I am going to let the whole taxes go in.

"*MR. ANDRESS*: No, sir. I am going to object to the whole taxes going in. There are things in here that is none of their business, about what they spent for various and assorted things, contributions or anything of that sort.

"*THE COURT*: There is some stuff in there that is going to make somebody look like they committed perjury here yesterday, too.

"*MR. ANDRESS*: Well, this is confidential information—

"*THE COURT*: I know, but look there and—

"*MR. ANDRESS*: Well Your Honor, I am very sorry, but I am not going to turn these tax returns over until I get an order from a higher court. The laws of the United States of America says that these are confidential. I will furnish them the information that may be necessary, but I will not turn the returns over to them.

"*THE COURT*: All right then, I will just have to dismiss this case here if you won't obey my order. I don't want to have to put you in jail, but I will dismiss the case.

"*MR. ANDRESS*: Let the record so show.

"*THE COURT*: Now, what do you want me to do?

"*MR. ANDRESS*: I am saying this. That I will turn over to them any pertinent information for which they ask in connection with it, but I will not turn over the corporation income tax returns for them as a fishing expedi-

tion because they are privileged under the laws of the United States of America.

"*THE COURT*: They may be, but here you are saying that they were not insolvent and you have got a very material issue. The lady says she owns Ninety Percent of the stock and the income tax returns shows she—

"*MR. ANDRESS*: Now Your Honor, you are revealing information that has not been asked for.

"*THE COURT*: That is the reason I am going to let it in. Now, do you want to let it in or do you want to dismiss your suit?

"*MR. ANDRESS*: Dismiss the suit.

"*THE COURT*: All right.

"*MR. ANDRESS*: I will not do it. We except and give notice of appeal to the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas. Your Honor, let the record show that when I said dismiss the suit, I was not acquiescing in the Court's action.

"*THE COURT*: I understand. All right. Listen to me. Plaintiff's counsel refused to obey the Court's order that the 1961 and '62 copies of the—

"*MR. ANDRESS*: '60 and '61 Judge.

"*THE COURT*: '60 and '61 copies of the Plaintiff's income tax reports be offered in evidence in accordance with the Court's orders, Plaintiff's cause of action is dismissed, to which the Plaintiff excepts and gives notice of appeal."

After dismissing the jury, the court made this statement:

"*THE COURT*: Let the record further show that the 1960 and 1961 income tax records show that Mr. Melton owns Eighty Percent of the stock and Mrs. Melton doesn't own any of it."

The judgment recites that after careful examination the court was of the opinion that the tax returns in their entirety were material and relevant to the issues on trial and for that reason were admissible in evidence and that because of plaintiff's disobedience to deliver the tax returns for admission into evidence, the case was dismissed with prejudice.

■ It is conceded by both parties that as a general rule income tax returns are not wholly privileged documents, but are subject to discovery to the extent of relevancy and materiality which must be shown. Crane v. Tunks, 160 Tex. 182, 328 S.W.2d 434; Maresca v. Marks, (S.Ct.) 362 S.W.2d 299.

Since the income tax returns were not introduced in evidence, or made a part of the record on appeal, we are not in a position to determine whether the returns in their entirety were relevant and material to the issues involved or whether the trial judge abused his discretion in so ruling. However, we have reached the conclusion that a determination of that question is not necessary.

The appeal is not predicated upon the order directing the income tax returns be delivered for introduction into evidence. The appeal is from the order of the court dismissing the appellant's suit "with prejudice" because of the refusal of the appellant's attorney to comply with the order of the court.

Appellant contends that the trial court was without authority to make an order dismissing its cause "with prejudice" and that same was void because not within the court's authorized jurisdiction. Appellee, on the other hand, contends that the order of dismissal was discretionary and that Rules 167 and 170, Texas Rules of Civil Procedure, and authorize such procedure.

Rule 167 relates to discovery. It specifically authorizes the court to order the production, inspection and copying of pri-

vate documents "which constitute or contain evidence material to any matter involved in the action and which are in his possession, custody, or control." Alternative penalties are provided for a refusal to make discovery as required by Rule 167. These penalties are found in Rule 170 and among them is one authorizing the court to dismiss the action or proceeding.

■ A district judge has and should have broad and ample powers to enforce his orders. However, the power to close the doors of the courthouse and refuse to proceed with a judicial hearing is a highly drastic sanction capable of abuse and resulting injustices. The penalty provided in the Rule is a harsh one and should be imposed only when clearly authorized. Sears, Roebuck & Company v. Hollingsworth, 156 Tex. 176, 293 S.W.2d 639.

At the time the coercive order was entered, the trial court refused to exercise his power of punishment for contempt. He chose, rather, to make use of the drastic order which assessed a penalty upon the appellant corporation before determining guilt of either the corporation or its attorney.

The income tax returns were before the court and the trial court clearly had the authority, under penalties of contempt, to require the same to be delivered for introduction into evidence. Rules 177a and 184, T.R.C.P.; Sears, Roebuck & Company v. Hollingsworth, supra; Dobbins v. Gardner (Tex.Civ.App.), 377 S.W.2d 665.

■ The trial court thus had two alternative methods of enforcing the production of the documents, either by contempt or by dismissal. The selection of the method of coercion within itself involved a matter of judicial discretion. In our view, the appellant should not have been deprived of its privileges as a litigant "until his contempt has been adjudicated rightfully." 17 C.J.S. Contempt § 97, page 276. We therefore reach the conclusion that a proper exercise of judicial discretion, un-

der the facts and circumstances presented here, would require a determination of the question of contempt before invoking a drastic order which fixes a penalty before a determination of guilt. Ordinarily, such procedure is effective to require the production of documents by the attorneys. The procedure employed here, however, would be effective only against the litigant. Had the trial court sought to enforce his order by contempt rather than by dismissal, the rights of the litigant would have been protected until the question of the power, authority and jurisdiction of the court to enter the order could have been tested in habeas corpus proceedings. Under all the facts and circumstances, we think the trial court abused his discretion in failing to exhaust other available remedies prior to ordering a dismissal. There is no showing that the corporation or any of its officers were in any way responsible for the conduct of their attorney. We think the appellant and its officers had a right to rely upon the trial judge to at least make an effort to require obedience to his order before assessing punishment against the corporation.

■ In addition to this, if the trial court had any authority to impose the penalty of dismissal "with prejudice" it must be found in Rule 170. We have carefully examined Rule 170 and fail to find anything therein which would indicate that the trial court is given authority to dismiss a cause of action "with prejudice." While the rule does provide that upon failure to obey an order made under Rule 167, the trial court is authorized to dismiss the action by proceedings, it nowhere provides that the same may be dismissed "with prejudice." Insofar as we have been able to determine, the sanction here invoked has no basis in either constitutional or statutory enactment, and we have been unable to find any decisions holding that a trial judge has such power. For this additional reason, we have therefore reached the conclusion that the trial court had no authority to penalize the appellant by completely terminating its litiga-

**348**

tion. Sears, Roebuck & Company v. Hollingsworth, supra; Murphy v. Stigall (Tex. Civ.App.), 352 S.W.2d 918.

For the reasons stated, the judgment of the trial court will be reversed and the cause will be remanded for a new trial.

Reversed and remanded.