**TEXHOMA STORES, INC., Appellant,**

v.

**AMERICAN CENTRAL INSURANCE COMPANY, Appellee.**

No. 17005.

Court of Civil Appeals of Texas.

Dallas.

Jan. 26, 1968.

Rehearing Denied Feb. 23, 1968.

Wm. Andress, Jr., of Andress, Wood-
gate & Condos, Dallas, for appellant.

Webber Beall, Jr., of Touchstone, Bernays & Johnston, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

Appellant Texhoma Stores, Inc. appeals from an order of the district court dismissing its suit, such order based upon the refusal of appellant to obey a pretrial order, issued pursuant to Rule 167, Vernon's Texas Rules of Civil Procedure, concerning the production of the original, or true copies, of federal income tax returns of the corporation.

This is the second appeal of this case. The first appeal, which was from an order dismissing appellant's suit, with prejudice, was decided by the Tyler Court of Civil Appeals in Texhoma Stores, Inc. v. American Central Ins. Co., 398 S.W.2d 344 (Tex. Civ.App., Tyler 1966, writ ref'd, n. r. e., Tex., 401 S.W.2d 593). The essential antecedent facts relating to the nature of appellant's cause of action and appellee's defense thereto are found in the opinion of the court set forth above.

Following reversal and remand of the first order of dismissal the trial court set the case for trial. Thereafter, and prior to trial, appellee insurance company filed its written motion for discovery and production of documents pursuant to Rule 167, T.R. C.P. By its motion appellee moved the court to "order Texhoma Stores, Inc., to produce in court for inspection by attorneys for defendant, income tax returns of Texhoma Stores, Inc. for the tax years 1959, 1960, 1961 and 1962; * * *." After alleging that one of its defenses to appellant's cause of action was that of arson by James R. Melton, an employee of Texhoma Stores, Inc., appellee alleged:

"That neither American Central Insurance Company nor its attorneys or other agents have previously examined said income tax returns, and are therefore unable to state specifically what information is contained therein, but does have reason to believe that said returns contain information concerning the ownership and financial condition of Texhoma Stores, Inc., list of merchandise inventories, purchases and sales, and other vital information, all of which is relevant and material to the issues on trial herein, so as to make said returns properly subject to discovery in their entirety."

As a part of its prayer appellee asked the court to require Texhoma Stores, Inc. to produce in court for inspection by the attorneys for appellee the income tax returns for the tax years 1959, 1960, 1961 and 1962 of the corporation or "in the alternative, that this Honorable Court order that the said tax returns be produced in court *for inspection by the Court* and that the Court then, in its own discretion, after *having duly inspected said returns,* determine what portions thereof are material and relevant to issues on trial in this lawsuit, and that those portions of said tax returns material and relevant to issues on trial in this lawsuit be produced to attorneys for American Central Insurance Company for inspection and discovery." (Emphasis supplied.)

Appellant filed its verified answer in which it attacked said motion for failing to state good cause for discovery and production of privileged income tax returns of the corporation. It was also alleged that the insurance company had audited the books of the corporation through an auditor of its choice and had secured whatever it desired from the records and had in its possession information concerning the ownership and financial condition of the corporation, list of merchandise inventories, purchases and sales, and all other information which it sought to elicit from the tax returns. It was also alleged that at the prior hearing all information requested or desired by counsel for the insurance company was furnished in open court and was in possession of the appellee. Appellant protested that the motion for production was for the purpose of harassing it and delaying disposition of the cause or because the judge of the court had expressed himself that he would not try the case until

the income tax returns had been produced and delivered and had refused to transfer the cause to any other court for trial.

In the affidavit attached to the answer appellant's attorney stated upon his oath that "he does not and never has had in his possession the 1959 income tax returns for the plaintiff, but that he does have copies of the 1960, 1961, and 1962 returns, *which he has been advised are not true and correct,* but which are the ones which were submitted to the inspection of the Court on 16 March 1965 as hereinabove set forth." (Emphasis supplied.)

Prior to hearing of the motion subpoenas duces tecum were served upon Mr. and Mrs. Melton and attorney William Andress directing that they produce in court "true and correct copies of the Income Tax returns," of Texhoma Stores, Inc., for the years 1959, 1960, 1961 and 1962.

Upon the hearing of the motion Mrs. Lucille Melton testified that she was president of Texhoma Stores, Inc., and was such officer during the times material to the hearing. She was asked if she had produced the tax returns of the corporation for the years 1959 through 1962, to which she responded that she had not done so but that they were in the possession of her attorney, Mr. Andress.

Mr. Melton was placed on the witness stand and testified that he did not remember whether he had ever been an officer of the corporation and did not know at the present time whether he was such an officer. He testified that he had made no effort to secure the copies of the income tax returns because he assumed that Mr. Andress had them in his possession. He further testified that after the fire occurred all of the Texhoma books and records were made available to the auditor on behalf of American Central Insurance Company; that such auditor spent two or three months going over the books and records of the company and that he was never refused any information asked for concerning the loss

made the basis of the lawsuit. That said auditor was furnished all of the information pertaining to merchandise inventories, purchases, sales, ownership and financial condition of the corporation.

Mr. William Andress, Jr., attorney for the appellant, was placed on the witness stand and testified that he had in his possession office copies of 1960, 1961 and 1962 tax returns but that he had never had in his possession the 1959 tax return. Over his protest, and by express order of the court, he delivered the office copies of the 1960, 1961 and 1962 tax returns to the court, receiving the court's receipt therefor. He testified that the copies delivered were the same returns that were involved in the first hearing. He testified that he did not personally prepare the income tax returns nor did he file them for the corporation. As to the correctness of the returns he said:

"Q Do you know of your own knowledge whether or not these are true and correct copies of the income tax returns filed by the corporation?

"A I do not."

Mrs. Melton was recalled as a witness and was asked to examine the copies which had been delivered to the trial judge. She testified that her signature, as president of the corporation, was on the 1960 and 1961 copies but that the 1962 copy was not signed.

Her testimony concerning the correctness of the copies was as follows:

"Q Mrs. Melton, would you state whether or not you can state under oath that these are true and correct copies of any income tax returns that was prepared? Of your own knowledge, do you know if all the information contained on there is true and accurate and represents those matters that are filed at that time?

"A No, sir, I don't.

"Q Did you personally prepare the income tax returns?

"A No, sir.

"Q Did you have any supervision in the preparation of the income tax returns?

"THE COURT: Did you personally have personal supervision of it?

"A Well, I wasn't present when they were prepared. Is that what you mean?

"Q Were these returns prepared from the books, ledgers and instruments which were submitted to a third party?

"A Yes, sir.

"Q And were you present at any time that the information was transferred or transposed from these books, ledgers and instruments to what are purported to be the returns here?

"A I don't know."

She testified that after the fire the corporation made available all of its books and records from which the income tax returns were derived to the auditor that was sent out on behalf of American Central Insurance Company and that he spent considerable time going over the records with the auditor for the company. She stated she never refused to furnish to the auditor for the appellee company any of the information which they requested from the books and records.

Following this testimony a colloquy occurred between the court and counsel for the parties concerning production of the original tax returns, or true copies, and the court suggested that such might be obtained from the Internal Revenue Department by appellant. The attorney for the appellee stated: "All we asked for and all I want is a correct copy of those income tax returns." Appellee's counsel also stated to the court that if the true returns were secured his client would defray the necessary cost for copying, etc.

The court then made the following order:

"THE COURT: * * * This is the order. Plaintiff, Texhoma Stores, Incorporated and its president, Mrs. Melton, are ordered to deliver to this Court *for examination* true copies of the 1959, 1960, 1961 and 1962 income tax report. Do you think you need more than thirty days?" (Emphasis supplied.)

Thereafter a written order was prepared, the essential parts being as follows:

"It is a further ORDER of this Court that defendant's Motion for Discovery and Production of Income Tax Returns should be and is in all things sustained; that Texhoma Stores, Inc. deliver to this Court within thirty (30) days from the date of this Order, the originals or correct copies of the originals, of the income tax returns of Texhoma Stores, Inc., for tax years 1959, 1960, 1961 and 1962; that upon receipt thereof by this Court the income tax returns for tax years 1960, 1961 and 1962 *shall be delivered to the attorneys of American Central Insurance Company* for examination and discovery pursuant to the opinion of this Court that said returns are in their entirety, relevant and material to issues on trial herein.

"It is a further ORDER of this Court that upon receipt of the original or correct copy of the original of the income tax returns of Texhoma Stores, Inc. for the tax year 1959, *this Court shall examine the same to determine whether said return is material* or relevant in part or in whole to issues on trial in this case, and if it be the opinion of this Court that said income tax return for the year 1959 is material and relevant to issues on trial in this case, then the same shall be delivered to the attorneys of record for American Central Insurance Company for examination and discovery, in whole or in part, as determined by this Court." (Emphasis supplied.)

Thereafter, upon failure of appellant to comply with the order, the trial court rendered its judgment in which it was stated that the court was of the opinion that "Plaintiff, through its officers and attorneys, has willfully refused, does willfully refuse, and intends further to willfully refuse to obey said pre-trial order without any legal or factual justification for such refusal; and the Court is further of the opinion that no useful purpose could be served by holding the Plaintiff, its officers or its attorneys, in contempt of court; * * *." The court then ordered that the cause of action be dismissed, without prejudice. It is from this order that appellant appeals contending primarily that the trial judge abused his discretion under the circumstances presented by applying the strict and harsh sanction of dismissal as provided by Rule 170, T.R.C.P. We agree with appellant and reverse the judgment.

The facts in this case are undisputed. Appellee, attempting to implement Rule 167, T.R.C.P., made demand upon appellant for the production of certain corporate income tax returns. At the hearing on such motion the only evidence produced revealed nothing more than that the retained office copies of the requested tax returns could not be verified. No testimony was adduced to establish the fact that the copies of the tax returns were true and correct copies of those filed with the Internal Revenue Service of the United States Government. In the light of this situation the trial judge then, for the first time, ordered appellant corporation to produce the original or true copies of the desired tax returns for inspection by the court to determine their materiality to the issues involved. However, the written order of the court directed the appellant to produce the original or true copies of the tax returns for all years except 1959 and directed same to be delivered directly to attorneys for appellee without inspection by the court. As to the 1959 return it was specifically ordered that such return be secured and delivered to the court for his inspection to determine mate-

riality prior to delivery to appellee's attorneys. Appellant refused to obey this order whereupon the court elected to apply that part of Rule 170, T.R.C.P., to dismiss the appellant's cause of action for failure to obey the pretrial order. In the light of these undisputed facts the propriety of the court's action must be weighed.

Associate Justice Moore, of the Tyler Court of Civil Appeals, correctly and succinctly stated the basic law of the case when he, as a part of his opinion in the prior appeal of this case, said:

"A district judge has and should have broad and ample powers to enforce his orders. However, the power to close the doors of the courthouse and refuse to proceed with a judicial hearing is a highly drastic sanction capable of abuse and resulting injustices. The penalty provided in the Rule is a harsh one and should be imposed only when clearly authorized. Sears, Roebuck & Co. v. Hollingsworth, 156 Tex. 176, 293 S.W.2d 639."

Accordingly, a correct resolution of the questions presented on this second appeal depends upon whether the penalty provided was clearly authorized by existing law.

Appellant, in several points of error, asserts that appellee failed to either allege or to prove facts which would constitute "good cause", as required by Rule 167, T.R.C.P., for the production of the income tax returns. Appellant contends that having failed to comply with the basic requirements of the rule itself, the trial court abused its discretion in ordering the production of the instruments and dismissing appellant's cause of action for failure to do so.

Rule 167, T.R.C.P., being substantially the same as Rule 34, Federal Rules of Civil Procedure (Title 28 U.S.C.A.) provides that:

"Upon motion of any party showing good cause therefor * * * the court

in which an action is pending may order any party to produce and permit the inspection and copying or photographing by or on behalf of the moving party, of any designated documents, papers * * * which constitute or contain evidence material to any matter involved in the action and which are in his possession, custody, or control * * *."

Both federal and state decisions construing Rule 167, T.R.C.P., and Rule 34, Federal Rules of Civil Procedure, state that while the spirit of these rules requires liberal construction it was never intended to revolutionize practice by allowing "fishing excursions". Thomas French & Sons v. Carleton Venetian Blind Co., 30 F.Supp. 903 (D.C.N.Y.1939); Marzo v. Moore-McCormack Lines, Inc., 7 F.R.D. 378 (D. C.N.Y.1945). The cases are also uniform in holding that the burden is upon the moving party to both allege and prove a good cause for the production of the instruments requested. An excellent statement of the rule is found in the article by Franki, Discovery, 13 Texas Bar Journal 447 (1950), wherein he says:

> "It should be kept in mind that a discovery order will not be granted simply because it is asked for. A discovery order is to be granted only upon a showing of good cause. There should be a showing that the documents or things sought to be inspected will in some way aid the movant in the preparation or defense of his case. A mere conclusion in the motion that the documents or things 'contain or constitute material and relevant evidence' is not enough; in addition, sufficient facts should be set out to enable the court to see the materiality of what is sought."

■ Many federal decisions, construing Federal Rule 34, support the proposition that under this rule authorizing the district court to order production of documents, etc., on motion of a party showing good cause, the court's judgment is not authorized in the absence of both allegation and proof of facts, and not mere conclusions, why the requested information is material to issues involved. The rule contemplates an exercise of judgment by the court, and not a mere automatic granting of such motion upon request of the moving party. The court's judgment must be supported by demonstration by the moving party of its need and materiality. Moreover, if the moving party can get the information without resorting to the discovery process, good cause does not exist. The "good cause" requirement is not a mere formality, but is a plainly expressed limitation on the use of that rule. Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152; Guilford Nat. Bank v. Southern Ry. Co., 297 F.2d 921 (4th Cir.1962); Hauger v. Chicago, R. I. & P. R. Co., 216 F.2d 501 (7th Cir.1954); United States v. National Steel Corp., 26 F.R.D. 603 (S.D.Texas (1960); Uncle Ben's Inc. v. Uncle Ben's Pancake Houses, Inc., 30 F.R.D. 506 (S.D.Texas 1962); Sonken-Galamba Corp. v. Atchison, T. & S. F. Ry. Co., 30 F.Supp. 936 (D.C.Mo. 1939); Panamusica Venezuela C. A. v. American Steel Export Co., 16 F.R.D. 280 (D.C.N.Y.1954); Bentz v. Cities Service Tankers Corp., 41 F.R.D. 294 (D.C.N.Y. 1966).

Our Texas courts, construing Rule 167, T.R.C.P., have also plainly followed this rule. Crane v. Tunks, 160 Tex. 182, 328 S.W.2d 434 (1959); Maresca v. Marks, 362 S.W.2d 299 (Tex.Sup.1962).

■ For obvious reasons when the moving party seeks to require the production of federal income tax returns it is all the more important that the requirements of the rule be scrupulously enforced before requiring production of such sensitive instruments. While it is true that income tax returns have been held not to be wholly privileged documents, and are subject to discovery to the extent of relevancy and materiality which must be shown, yet great care should be exercised in applying the rule as to such documents. As Justice

Steakley of the Supreme Court of Texas said in Maresca v. Marks, supra:

"Subjecting federal income tax returns of our citizens to discovery is sustainable only because the pursuit of justice between litigants outweighs protection of their privacy. But sacrifice of the latter should be kept to the minimum, and this requires scrupulous limitation of discovery to information furthering justice between the parties which, in turn, can only be information of relevancy and materiality to the matters in controversy.

"It is self-evident that the maximum protection of privacy is unattainable if trial courts do not exercise their discretion to safeguard from discovery those portions of income tax returns which are irrelevant and immaterial, and it is our view that failure to exercise such discretion is arbitrary action."

When we examine appellee's motion for discovery in the light of these rules it is our judgment that such motion does not comply with the "good cause" requirement. The motion states that the appellee has not previously examined the tax returns and does not know what is in them but that it "does have reason to believe that said returns contain information" material to issues involved in the case. No allegation is made that the information sought could not be obtained from other sources. Moreover, on the hearing of this motion appellee introduced no evidence to support the "good cause" requirement of the rule. All of the testimony introduced merely demonstrated that the copies of the tax returns produced by appellant and its attorney were nothing more than unverified office copies. There is no testimony introduced that the copies produced were true copies of those filed with the United States Government and which were desired by appellee.

We hold, therefore, that, appellee having failed to meet the requirements of the law with reference to allegations and proof of "good cause" for production of the instruments in question, the order of the court complained of amounted to abuse of discretion and must be set aside.

Another and patent reason is quite clearly apparent why the order must be reversed. As stated by our Supreme Court in both the Crane and Maresca cases, supra, the sole basis for allowing the trial court to withdraw the veil of secrecy from income tax returns is the demonstration of materiality. A clear and distinct rule was laid down by the Supreme Court directing trial judges in the manner of determining this issue. The Supreme Court stated that it was the burden upon the trial judge to privately examine the income tax return and determine what parts thereof were material to the issues involved. Only those portions found to be material should be admitted. In this case the evidence is uncontroverted that the office copies of the 1960 to 1962 returns of appellant corporation could not be verified as being true and correct copies of those filed with the Government. Accordingly, it would be impossible for the trial judge in this case to determine the materiality of the 1960, 1961 and 1962 returns filed by the corporation until said true copies had been obtained from the Government and examined. This was obviously the intent of the court when he made his order from the bench directing appellant to secure said original copies and deliver same to him "for examination." However, the written order itself directs that the original copies be obtained and delivered directly to attorneys for appellee with no mention of inspection by the trial court to determine the materiality thereof. Such procedure falls directly within the prohibition of the plain mandate of the Supreme Court and cannot be allowed to stand.

The remaining points of error advanced by appellant, which we have not discussed, have been carefully examined and are overruled.

For the reasons assigned the judgment of the trial court is reversed and remanded.