**Carl F. LUEG, Jr., Appellant,**

v.

**Howard E. TEWELL, Jr., M. D., Appellee.**

**No. 1313.**

Court of Civil Appeals of Texas, Corpus Christi.

Sept. 22, 1978.

Thomas E. Lucas, Lucas & Hudson, Houston, for appellant.

David Kithcart, Orrin W. Johnson, Harlingen, for appellee.

## OPINION

YOUNG, Justice.

This suit for alienation of affections, brought by Carl Lueg against Dr. Howard Tewell, was dismissed with prejudice under Rule 170, T.R.C.P., because Mr. Lueg failed to comply with a discovery order. We affirm.

On August 6, 1976, Mr. Lueg, and his wife were divorced. His ex-wife later married Dr. Tewell. Whereupon Mr. Lueg filed this suit on October 20, 1976, for alienation of affections. The petition generally alleged that Dr. Tewell schemed to break up Mr. Lueg's marriage by using his great wealth and masculine wiles to further his purpose.

Dr. Tewell answered with a general denial and gave notice of intention to take an oral deposition of Mr. Lueg which notice included a request to produce nine groups of documents. The requested documents mostly pertained to the operation of two nursing homes, one in McAllen and one in San Benito. These homes were operated and partly owned by Mr. Lueg, who owned a majority interest; the remaining interest was owned by his former wife, Mrs. Tewell. Particularly relevant to this cause was the request to produce check books and check stubs from January 1, 1976 to date for the San Benito home and copies of check vouchers on the McAllen home for the same period.

On December 2, 1976, appellee took appellant's deposition. Appellant did not produce six of the nine requested groups of items because they were at the auditor's office, but apparently promised the appellee that he would produce the other items, including the above mentioned check stubs and vouchers, by December 15, 1976. Appellant Lueg, however, did not produce these requested items as promised and on

March 7, 1977, appellee filed both a motion to compel their production and a motion for Mrs. Tewell to intervene as a party defendant.

This first motion requested production of nine groups of items, five of which were items requested in the subpoena duces tecum, mentioned above, and four of which applied to additional aspects of the operation of the two nursing homes. The requested items relevant to this appeal appeared and were numbered as follows: 5) the bank statements, cancelled checks, check stubs, and voucher copies of all checks from January 1, 1976 to date; 6) all records, bank statements, deposit slips, and escrow accounts, pertaining to appellant's acting as attorney ad litem for patients in the two nursing homes and more particularly as to deceased patient Lundquist, and three living patients, namely, Mora, Langham and Linnville; 8) all cancelled checks or other records which reflect a loan to certain officers, including payments made by the business with respect to any vehicle used by the plaintiff. The motion then states that good cause exists to grant the motion because the documents sought would reflect appellant's questionable business practices and how these practices were the actual cause of Mrs. Tewell's alienation from Mr. Lueg. It further states that the information would be beneficial in a shareholder's derivative suit as a counterclaim in the event Mrs. Tewell were allowed to intervene.

On March 15, 1977, appellee Dr. Tewell supplemented his motion to produce documents by requesting appellant's income tax returns, personal financial statements, and copies of all credit card applications and all receipts for food and travel.

Appellant Lueg challenged both of these motions, and at a hearing on March 17, 1977, the court sustained all of the appellee's requests, except that it imposed a limitation that the personal financial statements and credit card applications and receipts received after the August 6, 1976, divorce were not discoverable. The court also denied Mrs. Tewell's motion to intervene and ordered that all nine groups of documents be delivered to defendant on or before April 17, 1977.

On April 15, 1977, appellant forwarded documents to appellee's attorney in an attempt to comply with the court's order. Items five, eight, and nine in defendant's motion were not sent, however, as the appellant's attorney advised appellee that they were available for inspection at the Houston office of the appellant's attorney, in spite of the fact that both appellant and appellee resided in the Rio Grande Valley area.

On July 12, 1977, appellee filed a motion for sanctions for refusal to make discovery under Rule 167 and for contempt. The motion alleged that appellant had failed to produce items five, eight and nine of the first motion and the credit card receipts requested in the supplement and it requested their production. Moreover, it stated that the response to requested item six of the first motion was extremely incomplete and should be supplemented, and it also expounded upon the factual bases for Mrs. Tewell's concern as to the four specifically named accounts.

A hearing was then held on this second motion on May 20, 1977. The court sustained appellee's motion and ordered all requested items produced. The order further provided that the production of documents should take place in the County Courthouse at Brownsville, Texas, on June 3, 1977 at 2:00 P.M.

In furtherance of the order, the parties met on June 3, but because the volume of documents produced could not be copied in one day the parties agreed to recess the discovery until June 9, 10 and 13. On June 9 the discovery resumed in the offices of appellee's attorney in Harlingen, Texas. At that time, the appellee complained to appellant that he had not produced the items ordered. First, as to item five of the first motion, all bank statements, cancelled checks, check stubs and vouchers were not delivered. The record indicates that for every check issued from the McAllen nursing home, there were two carbon copies,

namely, a pink voucher copy and a white voucher copy. The pink copy was used for auditing and general accounting purposes and the white copy was attached to the invoice or other supporting data which precipitated the issuance of the check. None of the pink or white copies were delivered on the 9th of June and several of the original cancelled checks were not delivered. While appellant was requested to deliver all pink copies and white copies, he chose to bring only selected pink copies, none of which gave the information as to the missing cancelled checks. Appellant's reason for failing to produce all the pink copies was that his attorney had advised him that the appellees only wanted selected pink copies in spite of the fact that appellee's attorney was never present for any of the discovery proceedings on the 9th, 10th, or 13th.

Similarly, appellant apparently told the appellee that he would produce all of the voucher copies during this round of discovery, but, none of the white voucher copies were ever produced. Appellant's reason was again the advice of his attorney and that some of the white copies were at his auditor for year ending. Appellant did admit, though, that he did indeed possess many of the white copies requested but was just not going to produce them on advice of his attorney. In addition, appellant did not deliver the deposit slips to any of the requested bank statements until the 13th of June, at which time he did not give access to the cancelled checks, only the bank statements and deposit slips.

Secondly, as to item six, the records of the escrow accounts were again incomplete. Thirdly, none of the requested credit cards receipts were delivered. All other requested documents were apparently produced. As a result, appellee filed a second motion for sanctions and contempt. This motion was supported by extensive exhibits as to which requested documents had not been produced.

A hearing on this motion was held on July 21, 1977. At this hearing, Mrs. Tewell and Mr. Lueg testified. The essence of Mrs. Tewell's testimony was that the appellant was holding back certain documents and was being totally uncooperative. Appellant denied this and asserted that, for example, the checks were missing due to appellee's mishandling of appellant's financial records during the discovery process in June.

The court granted appellee's motion and ordered that appellant deliver four groups of documents, and deposit $1250.00 with the court for extra expenses by July 26 or his cause would be dismissed with prejudice. The items ordered were: 1) The missing checks; 2) the missing pink and white voucher copies; 3) the complete records as to the escrow accounts of the patients named in item six of the first motion and 4) the credit card information requested in the supplement to the first motion.

Appellant failed to comply with any of the requirements in this order and the court dismissed the cause with prejudice on July 29, 1977. Appellant then filed a motion for rehearing and a motion for new trial. These motions were overruled.

Appellant brings seven points of error. The first six points complain of error in the trial court's granting appellee's first motion for discovery and the supplement thereto. It should be noted, though, that the trial court made two subsequent discovery orders after sustaining appellee's first motion and supplemental motion of which appellant complains, namely, the May 20, 1977, order and the July 21, 1977, order. It was appellant's refusal to obey the last discovery order which precipitated the court's employment of the discovery sanctions.

■ It is a generally recognized rule that if sanctions are imposed for violating a discovery order, on appeal from the order imposing sanctions the appellate court will consider the propriety of the prior order for discovery. *Familias Unidas v. Briscoe*, 544 F.2d 182, 191 (5th Cir. 1976), 8 Wright and Miller, Federal Practice and Procedure, Civil § 2289 n. 55 (1970). In that regard, we will consider the propriety of the July 21, 1977, order rather than the original motion and order decided March 17, 1977, and will regard appellant's arguments as they relate to the last discovery order.

Appellant's first and fifth points contend the court abused its discretion in requiring the production of the ordered documents because good cause, relevancy and materiality were not shown.

According to *Ex Parte Shepperd*, 513 S.W.2d 813, 815 (Tex.Sup.1974), Rule 167 contains "general qualifications that the party seeking discovery must show 'good cause' and that the documents sought must be such as constitute or contain, or are reasonably calculated to lead to the discovery of, evidence material to any matter involved in the action." It is generally agreed that under Rule 167, the movant has the burden of both pleading and proving good cause and materiality. *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d 434 (Tex. Sup.1959); *Bryan v. General Elec. Credit Corp.*, 553 S.W.2d 415, 419 (Tex.Civ.App.— Houston [1st Dist.] 1977, no writ); *Irwin v. Basham*, 507 S.W.2d 621, 625–26 (Tex.Civ. App.—Dallas 1974, writ ref'd n. r. e.); *Zuider Zee Oyster Bar, Inc. v. Martin*, 503 S.W.2d 292, 298 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n. r. e.). In deciding whether the movant has met this burden, we look to the movant's motion or motions for discovery, his pleadings and his proof. See *Bryan v. General Elec. Credit Corp.*, supra; *Crane v. Tunks*, supra. A mere conclusion or assertion of good cause is not enough. *Narro Wrhse, Inc. v. Kelly*, 530 S.W.2d 146, 150 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.); *Texhoma Stores, Inc. v. American Central Ins. Co.*, 424 S.W.2d 466 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.). Also, if the moving party can obtain the requested information without resorting to the discovery process, good cause does not exist. *Texhoma Stores, Inc. v. American Central Ins. Co.*, supra.

In looking to the issues material to an alienation of affection case, and in reviewing the trial court's order in the light of the above rules, we find that the movant, appellee here, satisfied the good cause and materiality requirements.

The issues material to an alienation of affections suit are set out in the case of *McQuarters v. Ducote*, 234 S.W.2d 433 (Tex. Civ.App.—San Antonio 1950, writ ref'd n. r. e.). One of the three factors which the plaintiff must prove in an alienation of affections case is that the defendant's conduct was the controlling cause of the loss. Appellee's first motion to compel discovery stated that it was seeking the documents requested in order to show that it was the appellant's own questionable business practices which were the controlling cause of the loss of affection. Furthermore, during the several hearings on the motions herein appellee's attorney continually emphasized that the requested financial documents were material to showing the appellant's impropriety in his business dealings.

Further, as to the allegations and proof, appellee stated in his first and second motions for sanctions that the plaintiff possessed certain documents relating to a Guy Linnville Account and, against Mrs. Tewell's desires, the appellant kept a checking account, or deposit of some kind, for Linnville's monies and in some fashion ended up owning a panel truck which had been the property of the patient Linnville. The later motion further stated that nothing was produced as to the Lundquist Account, a matter of great anxiety to Mrs. Tewell during her marriage to appellant Lueg. Additional proof was introduced at the hearing on July 21, 1977. Mrs. Tewell testified that the escrow accounts had been a source of friction during her former marriage. The testimony also showed that Mrs. Tewell helped to keep the books of the nursing homes and had a personal knowledge of their contents. Her personal knowledge of the operations of the nursing homes apparently caused great anxiety. As a result, the appellee was seeking to discover the documents which caused this anxiety. Thus, we find the allegations and proof show that the checks, voucher copies, and escrow account records were material.

As far as the credit card information is concerned, it is material both to the appellant's financial status, the issue being raised in the appellant's petition alleging a great disparity of wealth between the

plaintiff and defendant, and to any issues as to the use and maintenance of the panel truck mentioned above where he requested records of payment or maintenance on any vehicle used by the corporation.

■ Concerning possession of the items requested, the evidence which showed their existence was supplied at the hearing on July 21, 1977, by the testimony of both the appellant and Mrs. Tewell. Mrs. Tewell testified that the checks had indeed existed and were not lost during the discovery process. Proof as to the existence of the missing vouchers was admitted by the appellant. Similarly, proof of the existence of the records respecting the escrow accounts was supplied by the appellant himself and by Mrs. Tewell's testimony. Finally, proof of the existence of the credit card information was supplied by Mrs. Tewell's testimony and by her verified letter to appellant. Thus, though the appellant contends that most of the documents requested in the court's last order were not in his possession, we find sufficient evidence to justify the court's finding possession in the appellant. The record also indicates that all of the items requested were not available to the appellee by any other means as evidenced by several letters in the record. Appellant also argues that some of the documents requested were available as public records. However, he gives no indication as to which documents they were and where they would be found as a public record. Accordingly, we hold that good cause existed to discover all requested documents.

Appellant argues, on the other hand, that the records and documents were not relevant to the issue of what was the controlling cause of the loss of Mrs. Tewell's affections. He reasons that Mrs. Tewell's thoughts and impressions concerning the business affairs and relative financial positions of the parties is the only relevant evidence to this issue at trial. We disagree. In *Lisle v. Lynch*, 318 S.W.2d 763, 767 (Tex. Civ.App.—Fort Worth 1958, writ ref'd n. r. e.), the court held that in an alienation of affection case evidence of financial circumstances was admissible to show the state of affection and cooperative relations between the spouses. Similarly, we here find that the evidence to *support* Mrs. Tewell's knowledge and beliefs as to the matters causing her loss of affection is admissible and therefore is discoverable. See 2 McDonald, Texas Civil Practice § 10.03 at 538 (1970).

■ Appellant also contends that the trial court's requiring appellant to produce his income tax records was an abuse of discretion. The record reflects, however, that these records were delivered to the appellee. This issue is accordingly moot. *Crane v. Tunks*, supra at 439.

Finding no showing that the trial court abused its discretion relative to the last discovery order, we overrule appellant's first and fifth points. See *Hopkins v. Hopkins*, 540 S.W.2d 783, 789 (Tex.Civ.App.—Corpus Christi 1976, no writ).

■ Appellant's second, third and fourth points of error contend the trial court abused its discretion in allowing the discovery herein because it amounted to a "fishing expedition", and because its purpose was to not only harass the plaintiff but to gain information for a shareholder's suit against the plaintiff. These contentions are without merit.

We find no evidence in the record that reflects an intent upon the appellee's part to harass the appellant. The record reflects that appellee sought to discover documents which would aid him in preparing his defense. Insofar as the shareholder's suit is concerned, Mrs. Tewell originally sought to intervene in this cause and bring a shareholder's action. Her request was denied, though, and the record reflects that the documents ordered produced in the order under consideration were all material to the appellee's defense, even though they might to some degree bear upon a stockholder's suit if, in fact, one is brought. Finally, the constraints of Rule 167 were designed to prevent "fishing expeditions." *Texhoma Stores, Inc. v. American Central Ins. Co.*, supra. We have found that the appellees satisfied the requirements of Rule 167 by

both showing good cause and materiality as to the documents requested. Appellants' points two, three and four are overruled.

Appellant's sixth point contends the trial court abused its discretion in ordering the production of the documents herein because they were not adequately described. We cannot agree.

The motions for sanctions and production of documents, which was heard July 21, 1977, lists every item requested and attaches supporting letters of correspondence which previously requested the same documents. We hold that both the motion to produce and the order of the court was sufficiently precise to notify the appellant as to which particular documents were desired. Appellant's sixth point is overruled.

Appellant's seventh point contends the trial court abused its discretion in dismissing appellant's cause with prejudice.

The argument under this point is not that the court was without jurisdiction to dismiss the case with prejudice, but rather that the court abused its discretion in so doing under the circumstances of this case.

The purpose of the sanctions provided in Rule 170 is to secure compliance with discovery orders, not to punish an erring party. *U. S. Leasing v. O'Neill, Price, Anderson*, 553 S.W.2d 11, 12 (Tex.Civ.App. —Houston [14th Dist.] 1977, no writ). The sanction of dismissal is a harsh one, and should be imposed only when clearly authorized. *Texhoma Stores, Inc. v. American Central Ins. Co.*, 398 S.W.2d 344 (Tex.Civ. App.—Tyler) writ ref'd n. r. e., 401 S.W.2d 593 (Tex.Sup.1966). A party must be given notice and a chance to be heard on any motion to impose a sanction for failure to produce documents. *Sears, Roebuck & Company v. Hollingsworth*, 156 Tex. 176, 293 S.W.2d 639 (1956). Once these procedural safeguards are met, the imposition of sanctions for failure to comply with discovery is directed to the sound discretion of the trial court, and the court's action can be set aside only upon a showing of clear abuse of discretion. *Young Companies, Inc. v. Bayou Corp.*, 545 S.W.2d 901 (Tex.Civ.App. —Beaumont 1977, no writ).

The facts in our case reflect that the appellant was given adequate notice of the motion to impose sanctions, and was given an opportunity to be heard with counsel present. An order was entered giving appellant five days in which to comply with the order or have his cause dismissed with prejudice. The record supports deductions by the trial court that the appellant willfully refused to provide any of the documents requested and that the appellant consistently enlisted dilatory tactics to delay the discovery, and even failed to comply with personal agreements. Under these circumstances it was not an abuse of discretion for the trial court to dismiss the cause with prejudice. Compare *Ramsay v. Santa Rosa Medical Center*, 498 S.W.2d 741 (Tex.Civ. App.—San Antonio 1973, writ ref'd n. r. e.), cert. den. 417 U.S. 938, 94 S.Ct. 3062, 41 L.Ed.2d 661 (1974). Accordingly, appellant's seventh point is overruled.

The judgment of the trial court is affirmed.