**N. Edward BOTTINELLI, Appellant,**

v.

**Herndon Y. ROBINSON, Sr., Appellee.**

**No. 17498.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 29, 1979.

Adams & Hunter, Royal D. Adams, San Antonio, for appellant.

Baker & Botts, G. Irvin Terrell, Houston, for appellee.

PEDEN, Justice.

N. Edward Bottinelli, plaintiff below, appeals from an order striking his pleadings and dismissing his cause of action with prejudice for failure to comply with a previous order of the court to produce certain documents requested by the defendant, Herndon Y. Robinson, Sr., pursuant to Rule 167, Texas Rules of Civil Procedure.

In his fourteen points of error, Bottinelli's chief complaints are that the trial court erred 1) in ordering the production of the documents despite Robinson's failure to allege and prove good cause for their production in his original Rule 167 motion; 2) in finding that the documents were not in fact produced; and 3) in dismissing the action with prejudice. The judgment of the trial court is affirmed.

Bottinelli filed suit in Dallas County against Robinson in July, 1976, seeking $6,581,250 in actual and exemplary damages and alleging fraud in connection with certain business transactions involving Bottinelli, Robinson, James C. Hadsell, and two corporations, Heritage Communities of America, Inc., of which Robinson was 25% shareholder, and Signa Land, Inc., of which Bottinelli was the sole shareholder at the time the suit was filed.

Bottinelli's petition asserts that the defendant, Robinson, breached their agreement to acquire Signa Land, Inc. and a 26.74 acre tract of land in Tarrant County from Hadsell by use of $1,830,000 borrowed from American General Investment Corp. Bottinelli says the loan was obtained on the strength of misrepresentations in Robinson's financial statement and on his personal guarantee.

Bottinelli says that Robinson breached their agreement by failing to make interest payments on the loan and that as a result American General foreclosed its lien on the 26.74 acres. Bottinelli claims actual damages arising from the loss by foreclosure and complains that the fraudulent financial statement caused him to lose consideration given to Hadsell for an option to buy Signa Land and the 26.74 acres.

Robinson filed a general denial.

In August of 1976, Bottinelli submitted 22 interrogatories, comprising some 104 questions, which Robinson answered in September of 1976. Robinson's plea of privilege was sustained after a hearing, and in December, 1977, the case was transferred to Walker County.

On September 18, 1978, a Walker County District Judge heard Robinson's Rule 167 motion for production of some 64 groups of documents. The court ordered Bottinelli to produce all of the requested documents on October 3 at the offices of E. M. Schulze, Jr., Robinson's attorney in Huntsville. Bottinelli and his attorney supplied a number of documents on October 13, but the copies made by Schulze do not include all of the requested ones. On November 3, Robinson submitted 22 interrogatories seeking to discover whether Bottinelli had in his possession or under his control certain documents that Robinson says were not produced on October 13, Bottinelli answered these interrogatories on January 15, 1979, after Robinson had moved for dismissal and obtained, on December 14, 1978, a court order to compel answers.

Bottinelli's answers to the interrogatories show that he had a number of documents that were not copied by Schulze. There was a disagreement as to whether Schulze had failed to copy them or Bottinelli had failed to produce them for copying. On March 19 the trial judge conducted a hearing on Robinson's second motion to dismiss and presumably found that Schulze had

copied everything produced. He stated that the motion would be granted unless Bottinelli produced all of the documents requested in the motion—all of which he had been ordered to produce in the prior order—by 11:00 a. m. on March 23 at the district clerk's office. Bottinelli's attorney delivered some but not all of the additional documents to the clerk's office on the morning of March 23, and the order striking Bottinelli's pleadings and dismissing his action with prejudice was signed and entered at 12:03 p. m. on that date.

The record of the venue hearing supplied some information as to the parties' respective positions. Robinson suggests that Bottinelli may have received a finder's fee from Hadsell on other transactions for obtaining Robinson as buyer of Signa and the 26.74 acre tract.

■ In his fourth and fifth points of error, Bottinelli complains that there was no evidence or, alternatively, insufficient evidence to support the trial court's finding that on October 13, 1978, he did not furnish all of the relevant documents available to him. He contends that he did produce all he had and that it was Schulze's responsibility, not his own, to see that all of them were copied. There is ample evidence before us to support the trial court's findings that at least some of the documents in Bottinelli's possession were not produced at the October 13 meeting.

Robinson alleges that five of the original 64 categories of documents have still not been produced and that those documents relate directly to the parties' conflicting contentions on the issues of Bottinelli's reliance, injuries, and damages. These categories are: 1) Bottinelli's cancelled personal checks showing his expenses in connection with Heritage Communities and the property in Tarrant County; 2) Bottinelli's cancelled personal checks showing money spent by him in connection with the option to purchase the Tarrant County property; 3) Signa bank checkbook stubs showing disbursement of the loan proceeds received by Signa; 4) two or three of Bottinelli's financial statements under the name of Inter-

state Investment Trust; and 5) certain documents relating to money or benefits exchanged between Bottinelli and Hadsell. On appeal, Bottinelli disputes the relevance of some of these items. We think no useful purpose would be served by detailing Robinson's explanations of his need for these documents; his brief contains a clear explanation of how each document sought contains evidence material to the suit.

In Bottinelli's answers to interrogatories 1–5, 9–14, and 18–22 and through his attorney's testimony at the March 19 hearing. He admits that the documents do exist and that they were in his possession or under his control. The remaining question, then, is whether those documents were produced at the October 13 meeting.

The only evidence that the documents were furnished on October 13 is the assertion by Bottinelli's attorney that they were. On the other hand, both Schulze and Linda Bond, the assistant who actually did the copying, testified that they did not see several of them, and Bottinelli's attorney admitted at the March 19 hearing that he had not brought to the October meeting any personal checks or all of the documents relating to transactions between Bottinelli and Hadsell. Thus, the trial court had ample evidence that at least some of the documents ordered produced in the September 18 court order were not supplied on October 13.

We overrule points four and five.

■ In his sixth, seventh, and eighth points of error, Bottinelli complains that there was no evidence or, alternatively, insufficient evidence to support the trial court's finding that additional necessary documents were not produced by 11:00 a. m. on March 23.

The only evidence on this question is found in the transcript, of which over one hundred pages contain copies of all of the documents purportedly delivered by Bottinelli's attorney to the district clerk's office on March 23. We find no personal checks of Bottinelli or of Signa Land. Moreover, there is only one financial statement for

Bottinelli, although his attorney testified that he had "two or three" under the name of Interstate Investment Trust.

It is true that the trial court could have found from the evidence at the March 19 hearing that the other financial statements and the Signa Land checks had already been produced at the October meeting. It is also true that among the documents delivered on March 23 was a letter signed by Bottinelli authorizing Robinson's attorneys to secure copies of "all transactions including checks" from Signa Land's bank. Robinson points out that the Signa checkbook stubs originally requested may contain more information that would be of use to him in preparing his defense than would be shown by the bank's records. In any event, the letter of authorization covers only Signa Land's account, not Bottinelli's personal account.

Even viewing the evidence on all counts in the light most favorable to Bottinelli, it is ample to show that copies of Bottinelli's personal cancelled checks have not been furnished to Robinson as ordered by the trial court. On the contrary, there is both testimonial and circumstantial evidence to indicate that they have not been produced. Hence there is enough evidence to support the trial court's finding that as of March 23, 1979, at least some of the documents ordered produced had not been delivered either to Robinson or to the clerk of the district court. Points six, seven, and eight are overruled.

In his third point of error, Bottinelli contends that the authority given to the court under Rule 170, T.R.C.P., to dismiss an action extends only to a dismissal without prejudice, regardless of the particular circumstances of the case.

Rule 170 provides in pertinent part:

If any party . . . refuses to obey an order made under Rule 167 the court may make such orders in regard to the refusal as are just, and among others, the following:

. . . . .

(c) an order striking out pleadings or parts thereof, . . . or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

It is true that Rule 170 does not specifically state whether the dismissal authorized in subparagraph (c) may be a dismissal with prejudice. There is persuasive authority on both sides of this question. The Texas Supreme Court has not yet ruled upon it.

Dismissal with prejudice under Rule 170 was approved in *Lueg v. Tewell*, 572 S.W.2d 97 (Tex.Civ.App.1978, no writ), and in applying Rule 37(b)(2), (c) of the Federal Rules of Civil Procedure, which like the Texas Rule authorizes dismissal for failure to make discovery but does not specify whether the dismissal can be with prejudice, a number of federal courts have held that the sanctions may include dismissal of a plaintiff's action with prejudice. See, e. g., *G–K Properties v. Redevelopment Agency of City of San Jose*, 577 F.2d 645 (9th Cir. 1978); *Griffin v. Aluminum Company of America*, 564 F.2d 1171 (5th Cir. 1977); *Interstate Cigar Company v. Consolidated Cigar Company*, 317 F.2d 744 (2nd Cir. 1963); *Brookdale Mill, Inc. v. Rowley*, 218 F.2d 728 (6th Cir. 1954).

On the other hand, it was held in *Texhoma Stores, Inc. v. American Central Insurance Co.*, 398 S.W.2d 344 (Tex.Civ.App.1966, writ ref. n. r. e. 401 S.W.2d 593) that the dismissal authorized by Rule 170(c) means only dismissal without prejudice. However, the Supreme Court of Texas did not explicitly approve the intermediate court's holding on this question in its per curiam opinion refusing the application for writ of error. It was also held, based on logical arguments, in *Phillips v. Vinson Supply Company*, 581 S.W.2d 789 (Tex.Civ.App.1979, no writ) and in *Gonzalez v. Mann*, 583 S.W.2d 637 (Tex.Civ.App.1979, reversed on other grounds 23 Tex.Sup.Journal 52, Nov. 3, 1979) that the trial court may not order a dismissal with prejudice as a Rule 170 sanction.

■ We overrule this point. Both Texas Rule 170(c) and Federal Rule 37(b)(2), (c)

specifically authorize the trial court to render a default judgment against a disobedient party. A default judgment can, of course, only be rendered against a defendant, while dismissal of an action or claim, on the other hand, can only be entered against a plaintiff. We agree with the appellee that it undermines even-handed fairness under the discovery rules to hold that a trial court may enter a default judgment against a recalcitrant defendant, thereby finally disposing of his liability defense, yet may not dismiss with prejudice the action of plaintiff who refuses to permit discovery, leaving him to refile the action and avoid the discovery order.

Bottinelli's points eleven through thirteen are that even assuming the trial court had the power to dismiss his suit with prejudice, the dismissal was an abuse of discretion under the circumstances. He points out that the primary purpose of discovery sanctions is to secure compliance with the discovery rules, and not solely to punish erring parties. Thus, while admitting that Rule 170 gives the trial court wide discretion in imposing sanctions, he argues that in this case it was an abuse of discretion not to have imposed some less severe sanction before resorting to dismissal with prejudice.

■ In deciding whether or not there was an abuse of discretion, it is not for us to substitute our judgment for that of the trial court. Rather, the question is whether the trial court's decision was arbitrary or unreasonable. *Landry v. Travelers Insurance Company*, 458 S.W.2d 649 (Tex.1970). Rule 170 endows a trial court with broad discretion to fashion an effective remedy, given the particular circumstances, for failure of a party to comply with discovery rules. Hence, the court's action can be set aside only upon a showing of a clear abuse of that discretion. *Meyer v. Tunks*, 360 S.W.2d 518 (Tex.1962); *Fisher v. Continental Illinois Bank and Trust Company of Chicago*, 424 S.W.2d 664 (Tex.Civ.App.1968, writ ref. n. r. e.).

■ In this case, the trial court ordered Bottinelli to produce a number of documents, and although all of them were purportedly produced on October 13, the court could have concluded, and apparently did, that several of them were not delivered. Bottinelli's attorney admitted that he had not produced all of the documents relating to transactions between Bottinelli and Hadsell or any of the personal checks. Moreover, the trial court was entitled to conclude from the testimony of Ms. Bond and Mr. Schulze that he also failed to produce the Signa Land checkbook or any of Bottinelli's tax returns.

Robinson then served interrogatories on Bottinelli on November 3. When these were not answered within the thirty days specified and allowed by law, Robinson sought a court order compelling answers. Bottinelli did not appear, although he was timely notified of the hearing on this motion, and on December 14 the court ordered him to file answers within ten days after receiving notice of the order. Although his attorney received the notice on December 18, by December 28 the interrogatories were still unanswered, yet the trial court did not penalize Bottinelli at the January 8 hearing on Robinson's first motion to dismiss; instead, it gave him until January 15 to file his answers.

At the March 19 hearing on Robinson's second motion to dismiss, the trial court again declined to dismiss the suit. Although the trial judge found that Bottinelli had still not furnished all of the documents he was required to produce, he was given yet another opportunity to comply. If he produced them all by March 23, he would suffer no penalties; if he did not, he had fair warning that his action would be dismissed. Under the circumstances, where Bottinelli had six months to produce documents which he admitted were in his possession or under his control, and where he continually failed to respond in timely fashion to discovery motions and orders, we cannot say the trial court acted in an arbitrary or unreasonable manner in dismissing his action. Compare, *Lueg v. Tewell*, supra; *Rainwater v. Haddox*, 544 S.W.2d 729 (Tex.Civ.App.1976, no writ); *Ramsay v. Santa Rosa Medical Center*, 498 S.W.2d 741

(Tex.Civ.App.1973), cert. denied, 417 U.S. 938, 94 S.Ct. 3062, 41 L.Ed.2d 661 (1974); *Thomas v. Thomas,* 446 S.W.2d 590 (Tex. Civ.App.1969, writ ref. n. r. e.).

■ The primary purpose of discovery sanctions is to secure compliance with the discovery rules, not simply to punish disobedient parties. *Lloyd A. Fry Roofing Company v. State,* 524 S.W.2d 313 (Tex.Civ. App.1975, writ ref. n. r. e.); *Plodzik v. Owens-Corning Fiberglas Corporation,* 549 S.W.2d 52 (Tex.Civ.App.1977, no writ); *Ebeling v. Gawlik,* 487 S.W.2d 187 (Tex.Civ. App.1972, no writ). However, the sanctions applied in our case were not solely punitive. Unlike the complaining parties in *Sears, Roebuck & Company v. Hollingsworth,* 156 Tex. 176, 293 S.W.2d 639 (1956); *Plodzik v. Owens-Corning Fiberglas Corporation,* supra; and *Ebeling v. Gawlik,* supra, Bottinelli had ample notice and opportunity to be heard on both the motion to produce and the motions to impose sanctions. He was represented at all times by competent counsel and had every opportunity to avoid the consequences now imposed. To avoid them, he had only to obey the court's orders. Even after entry of the order to dismiss, he had four additional days to comply. The trial court's allowing him those extra days should have served to encourage and facilitate Bottinelli's compliance with the discovery rules.

In any event, though encouraging compliance may be the primary purpose of discovery sanctions, it is by no means their only important function. In *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 689, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), the United States Supreme Court articulated the important purpose of deterring future violations of discovery rules and court orders. A court of appeals had found that the district court abused its discretion in dismissing the plaintiff's action for failure to timely answer interrogatories, but the Supreme Court reversed, stating:

> There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order. . . .
>
> But here, as in other areas of the law, the most severe in the spectrum of sanctions . . . must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. 427 U.S. 639, 642–643, 96 S.Ct. 2778, 2780–2781.

Litigants who abuse the discovery procedures and use them to play a delaying game or to conceal evidence do more than inconvenience or prejudice their opponents. As was pointed out in *G–K Properties v. Redevelopment Agency of City of San Jose,* supra, "[i]t is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism." 577 F.2d at 647. See also, Note, "The Emerging Deterrence Orientation in the Imposition of Discovery Sanctions," 91 Harv.L.Rev. 1033 (1978).

In the case before us, the sanctions imposed by the trial court served initially to encourage Bottinelli to comply with the court's order and produce the documents and finally to deter him and other litigants from future abuses of the discovery process. Although we might not have chosen the specific sanctions applied here, we cannot say the trial court abused its discretion in striking Bottinelli's pleadings and dismissing his suit for failure to comply with the discovery order.

Points eleven through thirteen are overruled.

■ Bottinelli complains in his first and second points of error that the trial court erred in ordering him to produce the documents in question because Robinson failed to allege and prove good cause for their production in his original Rule 167 motion. The motion merely recites that each of the documents sought contains, or will lead to the discovery of, evidence material to the suit. It is true that the mere recital of a

party's conclusion that documents sought contain material and relevant evidence is not enough and that sufficient facts must be set out to enable the court to determine whether there is good cause to grant the motion. *Texhoma Stores, Inc. v. American Central Insurance Company*, 424 S.W.2d 466 (Tex.Civ.App.1968, writ ref. n. r. e.); *Bryan v. General Electric Credit Corporation*, 553 S.W.2d 415 (Tex.Civ.App.1977, no writ).

■ We overrule these points of error. Bottinelli raised this matter for the first time on appeal, and even now he does not contend that there *is* no good cause, only that Robinson failed to allege and prove good cause. Bottinelli did not contest the motion for production, and it does not appear that the question of good cause was ever called to the attention of the trial judge.

■ There is no merit to Bottinelli's complaint, raised in points nine and ten, that the trial court erred in not holding an evidentiary hearing on March 23 to see if all the documents had been delivered to the clerk's office. Bottinelli had ample opportunity at the hearing on March 19 to contest the motion to dismiss and to try to prove he had complied with the court's order. In any event, the point is not briefed and we need not address it further. *Archer v. State*, 548 S.W.2d 71 (Tex.Civ.App.1977, writ ref. n. r. e.); *City of Austin v. Flink*, 443 S.W.2d 397 (Tex.Civ.App.1969, rev'd on other grounds, 454 S.W.2d 389).

Bottinelli's fourteenth and final point of error asserts that the trial court abused its discretion "in basing its action on a letter between counsel, rather than upon a specific order of the Court." The letter referred to is one sent by Robinson's attorney to Bottinelli's attorney confirming the date for the final hearing and requesting that the missing documents be brought to the March 19 hearing. Bottinelli argues that he was under no court order to produce the documents at the March hearing and that the court based its sanctions on his refusal to comply with the request in the letter.

This point, too, lacks merit. At the close of the March 19 hearing the trial judge declined to give Bottinelli's attorney more than four additional days in which to produce the documents, stating, "You have had two weeks since this last letter to have them down here." The court's reference to the letter was obviously intended merely to point out that since Bottinelli had been on notice for at least two weeks since receipt of the letter that Robinson still wanted certain documents, then he should not need more than four additional days to look for them. Bottinelli had in fact been on notice for six months, from the time Robinson first filed his motion under Rule 167.

The court did not base its dismissal of the suit on Bottinelli's failure to bring the documents to the March 19 hearing. It ordered his pleadings stricken and his action dismissed because he still had not produced all of the requested documents some six months after the court had explicitly ordered him to do so and despite diligent efforts to obtain his compliance.

The judgment of the trial court is affirmed.

EVANS and WARREN, JJ., participated.